Towson PRICE, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORP., Defendant.

Civ. A. No. 970–57.

United States District Court
D. New Jersey.

Feb. 28, 1962.

Towson Price, Montclair, pro se.

Stryker, Tams & Dill, by Walter Waldau, Newark, N. J., for defendant.

WORTENDYKE, District Judge.

Plaintiff, Towson Price, a retired employee of the defendant, Westinghouse Electric Corp. (Westinghouse), filed his complaint on September 23, 1957 against the Secretary of the Department of Health, Education and Welfare of the United States, (Secretary) and his former employer, Westinghouse. As against the Secretary, plaintiff sought a declaratory judgment that he was entitled to old age insurance benefits under the Social Security Act (42 U.S.C.A. § 301 et seq.) without diminution by reason of earnings from his self-employment in the practice of law. As against Westinghouse, plaintiff seeks a judgment declaring that he is entitled "to payment by Westinghouse of the full retirement pension payments under the Westinghouse pension plan, including the (by him) ex-

pected full Social Security payments * * * without any deduction in view of any earnings * * * while retired, and for an award to make up any deficiency in past or future payments under that plan so calculated." The issues between plaintiff and the Secretary were disposed of on motion, by a summary judgment in favor of the Secretary. Price v. Folsom, D.C.N.J.1958, 168 F. Supp. 392, aff'd 3 Cir. 1960, 280 F.2d 956, cert. den. 1961, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695. Pending the final disposition of those issues, counsel agreed that the determination of the remaining cause of action against Westinghouse should be severed and stayed. The latter cause of action has now been submitted to the Court for trial without a jury, upon a written stipulation of facts. Jurisdiction is based upon diversity of citizenship and the declaratory judgments act, 28 U.S.C. §§ 1332 and 2201. Arguments of counsel have been submitted upon briefs; the final reply brief having been received by the Court on February 19, 1962.

With respect to Westinghouse, plaintiff alleged that he was employed by that corporation as a patent attorney, from September 1936 to June 1954, and that, upon reaching the age of 65 years on the 14th of the latter month, he was retired under a pension plan then in force, by the provisions of which payments thereunder "were adjusted to Social Security benefits expected to be paid to him." At the pretrial conference on the cause of action against Westinghouse, leave was granted to the plaintiff to amend the allegations of his complaint to allege a longer period of service to Westinghouse than that originally set forth therein. Accordingly there was included in the stipulation of facts, the statement that plaintiff was also employed by Westinghouse as a technical apprentice from June to December 1909, and as a patent attorney from March 1, 1922 to December 31, 1924, inclusive. He was laid off on the latter date, and thereafter reemployed as a patent attorney from September 1, 1936 to June 30, 1954, inclu-

sive. It was further conceded at the pre-trial conference that the provisions of the pension plan upon which the plaintiff's rights depended are embodied in a pamphlet entitled "Westinghouse Pension Plan" as revised September 1, 1953, a copy of which is annexed to the stipulation of facts.

I find from the evidence submitted that diversity of citizenship exists between the plaintiff and Westinghouse. Plaintiff was continuously employed by Westinghouse as a patent attorney from September 1, 1936 to June 30, 1954, inclusive, and was retired from the defendant's service as of July 1, 1954, after attaining the age of 65 years on June 14 of that year. He thereupon became eligible to the benefits of the "Westinghouse Pension Plan" and has received the sum of $91.86 per month from Westinghouse since that time. The Plan provides that each employee who reaches his normal retirement date, and by such date has completed 15 or more years of continuous service, shall be entitled to a monthly pension under the Plan. The normal retirement date of an employee is defined in the Plan as the last day of the month in which his 65th birthday occurs. Pension payments commence on the 1st of the month following the employee's 65th birthday, which latter day is his normal retirement date. The Plan consists of two portions,—non-contributory and contributory. The employee retiring at his normal retirement date on or after September 1, 1953, becomes entitled to receive a monthly pension payable for his lifetime, under the *non-contributory* portion of the Plan. After September 1, 1953, any salaried employee whose continuous service shall have started prior to his 50th birthday, became eligible to participate in the *contributory* portion of the Plan on January 1 following any year in which his base salary rate as of December 1, was $400 a month or more ($92.31 per week). Participation in the *contributory* portion of the Plan may be effected by the employee's filing of an enrolment card, authorizing deduction from his salary of his monthly contribution. The amount of additional monthly pension payable at the normal retirement date to the participating employee for life is set forth in a schedule contained in the Plan, which relates the monthly pension to the contributing employee and the amount of his contribution to the rate of his monthly or weekly earnings. $27.20 of the $91.86 which plaintiff is receiving as monthly pension payments under the Plan reflects his contributions under the *contributory* portion of the Plan.

Effective on and after March 1, 1954, and therefore applicable to the plaintiff, the Plan provides that "the monthly pension payable under the Non-Contributory Portion hereof to an employe, from any trust fund or funds or under any insurance contract or contracts established under this Plan, shall not be reduced solely because of any increase in such employe's Primary Insurance Benefit under the Federal Social Security Act which results from any change in such Act; provided (a) such change is enacted into law after March 1, 1954, and (b) the employe reaches his Normal Retirement Date prior to the effective date of such change." The Plan further provides that the adoption of the Plan neither creates nor vests in any employee or any other person, any interest, pension or benefits other than the benefit specifically provided in the Plan, nor confers upon any employee the right to remain in the service of the employer. It is further provided that "[i]f an employe is eligible to receive a Primary Insurance Benefit under the Federal Social Security Law or Any Other Law, as defined in section 1, the employe shall provide the Company with evidence of the amount of the benefit which he is eligible to receive. If the employe is not eligible to receive a Primary Insurance Benefit at the time of retirement, he shall at the Company's request ask the Social Security Administration to provide such data as may be necessary to estimate the Primary Insurance Benefit to which he might become entitled." The primary insurance benefit under the Federal So-

cial Security Act, or any other law, as that phrase is used in the excerpt from the Plan last above quoted, is defined in section 1 of the Plan as "the monthly equivalent of the total pension, old age, and disability benefits payable to the employe under the Federal Social Security Act or any other state, federal or foreign law as now in effect or hereafter amended or enacted (not including benefits paid solely by reason of dependents but including the maximum benefit to which the employe is, shall become, or upon application would become, entitled without regard to any disqualification or any reduction or loss in benefits which may result because of other income, delay in making application, or any other reason). * * *."

An analysis of the computation of the monthly pension payment of $91.86 which the plaintiff is receiving from Westinghouse has been agreed upon by the parties, and is designated as Exhibit 7, annexed to the stipulation of facts.

On June 15, 1951, plaintiff acknowledged in writing that his continuous service to Westinghouse for pension purposes commenced on September 1, 1936, and that his average monthly earnings at that time (June 15, 1951) amounted to $652.12. (Exhibit 4 annexed to the stipulation of facts.)

Plaintiff contends that the following questions are presented for adjudication, viz.: (1) how many years of continuous service to Westinghouse had plaintiff completed at his normal retirement date; (2) is plaintiff entitled to an increment in his Westinghouse pension in an amount equal to the diminution of his Social Security payments by reason of his self-employment earnings; and (3) is defendant indebted to the plaintiff in *quantum meruit* or *indebitatus assumpsit* for patent services rendered on May 17, 19, 22, 23 and 26, 1961. The last mentioned issue (3) is not before the Court. It was not raised by the pleadings nor stated in the pretrial order. Had it been so presented, the Court would lack jurisdiction for lack of minimum required amount involved. 28 U.S.C. §

1332. We proceed to answer the remaining two questions in the light of the evidence.

■ Recognizing that completion of fifteen or more years of *continuous* service to Westinghouse is a *sine qua non* to his eligibility for pension, plaintiff argues that his employment with Westinghouse from March 1, 1922 to December 31, 1924, inclusive, should be "tacked on" to his service from September 1, 1936 to June 30, 1954, inclusive, and the aggregate of those two periods treated as "continuous service" for the purpose of computing the amount of his pension, thereby increasing his total pension under the non-contributory portion of the Plan. Plaintiff's contention in this regard lacks support in the evidence. Section 1 of the Plan defines "Continuous Service" as used therein as "the employe's period of unbroken regular service in the employ of the Employer, including time spent on any of the following: (1) Furlough (2) Leave of absence * * * (3) Disability (4) Involuntary separations of less than twelve (12) months * * * (subject to qualifications not here apposite) [and] (5) Voluntary separations of less than thirty (30) days * * *." "Involuntary separation" as used in the Plan means "separation by layoff, release or discharge". Plaintiff concedes that he was laid off on December 31, 1924, but contends that his layoff at that time was improper. He took no timely action to test the propriety of that layoff. Moreover, on June 15, 1951 he acknowledged in writing that his continuous service period for pension purposes commenced on September 1, 1936. That period may not now be enlarged.

■ Finally, plaintiff's contention that the amount of his pension from Westinghouse should replace the amount of Social Security benefits which he was required to forego by reason of excess earnings from his post-retirement self-employment must be overruled. Plaintiff attempts to estop Westinghouse from denying that it guaranteed to him that he would continue to receive, after his re-

tirement, the equivalent of the sum of his pension and Social Security benefits as of the date of retirement. He relies upon alleged representations of Westinghouse in Exhibits 2, 2A, 3 and 5 annexed to the Stipulation of Facts. Such reliance is misplaced. Exhibit 2 is a retirement notice, dated April 8, 1954 advising plaintiff that on his normal retirement date, July 1, 1954, after continuous service from September 1, 1936, he would receive a total pension (including primary Social Security benefits of $85.) of $176.86. Attached to Exhibit 2, and referred to in the Stipulation as Exhibit 2A, is a calculation sheet showing the computation of the proposed Westinghouse non-contributory pension to which the plaintiff would become entitled, as compared with the then present Plan. The old Plan provided a Westinghouse non-contributory pension, at normal retirement date, of $107.45 in plaintiff's case. It stated "[t]his pension includes Primary Social Security Benefit. Any increase in Social Security would cause an equal reduction in pension under the Plan." The *new* Plan computed plaintiff's non-contributory pension at $64.66, *exclusive* of any Social Security benefit, but listed the then current Social Security benefit figure applicable to the plaintiff as amounting to $85.00, with the following asterisked caveat: "Assuming present Primary Social Security Benefit does not change. Any increase in Social Security would increase the employe's total pension."

Exhibit 3, "Statement of Gross Pension Distribution," is made up of the following items:

| | |
|---|---|
| Retirement Annuity Plan Benefits | $ 44.49 |
| Westinghouse Pension Plan Benefits—Non-Contributory | 20.17 |
| Westinghouse Pension Plan Benefits—Contributory | 27.20 |
| Total Westinghouse Pension | $ 91.86 |
| Social Security Benefits | $ 85.00 |
| Total Pension | $176.86 |

Reverting to Exhibit 5, the Westinghouse Pension Plan pamphlet *as revised September 1, 1953,* from which I have quoted above, we learn from the Foreward that "[a]ll normal retirement benefits under the Non-Contributory Portion will now be *in addition to Social Security Benefits,* although such benefits were deductible from the non-contributory benefits originally provided under the Plan." Section 4, paragraph C of this Revised Plan provides that "[t]he pension benefits determined in accordance with Paragraphs A and B above shall be in addition to any benefits under the Federal Social Security Act, * * *." (Paragraph A determines the amount of plaintiff's non-contributory pension. Paragraph B provides, *inter alia,* that no pension shall accrue to employees under the Westinghouse Electric Annuity Plan effective May 1, 1929 and/or the Westinghouse Retirement Annuity Plan, effective January 1, 1943, after December 31, 1950). Paragraph C of section 4 of the revised Plan, hereinabove quoted, expressly negatives the plaintiff's contention that his Westinghouse non-contributory pension includes (because it is therein expressly stated to be in addition to) any benefits under the Federal Social Security Act. As further disclosed in Paragraph E of the same section 4, hereinabove quoted, plaintiff's non-contributory Westinghouse pension may not be reduced solely because of any increase in his primary insurance benefit under the Federal Social Security Act.

No representations were made by defendant which support plaintiff's claim, and upon which plaintiff had a right, as a reasonable man, to rely. Plaintiff's pension rights are limited by the provisions of the revised Pension Plan in effect at the time of his retirement. Gallo v. Howard Stores Corp., D.C.Pa.1956, 145 F.Supp. 909, aff'd 3 Cir. 1957, 250 F.2d 37.

Plaintiff's contention that Westinghouse's former employee, Michael E. McGowan, was more favorably treated than was the plaintiff is irrelevant. From the Stipulation of Facts here, it appears

that Mr. McGowan retired on October 1, 1952, under different pension plan provisions from those in effect at the time of the retirement of the plaintiff in this case.

I conclude that plaintiff has failed to sustain his burden of proof that he is entitled to relief upon the claims of his complaint against Westinghouse. The complaint will, therefore, be dismissed as to that defendant, and judgment, accordingly, may be entered. Submit order.