604 F.2d 1219
 102 L.R.R.M. (BNA) 2548, 87 Lab.Cas. P 11,575
 CA 79-3491 Cecil B. TURNER, and all others similarly
situated, Plaintiff-Appellant,
v.
LOCAL UNION NO. 302, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
et al., Defendants-Appellees.
 No. 77-2523.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 21, 1979.
 
 1
 Alfred H. Sigman (argued), California Rural Legal Asst., Oakland, Cal., for plaintiff-appellant.
 
 
 2
 Brudage, Beeson, Tayer & Kovach (argued), San Francisco, Cal., Edward H. Moore, Moore, Sizoo & Cantwell, Oakland, Cal., on brief, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before ELY and ANDERSON, Circuit Judges, and JAMESON,* District Judge.
 
 JAMESON, District Judge:
 
 5
 This is an appeal by Cecil B. Turner, a retired employee of the dairy industry, as a class representative, from a summary judgment in favor of five labor organizations and six employers, in an action by Turner under §§ 301(a) and 302(c)(5) of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. §§ 185(a) and 186(c)(5), seeking restoration of certain benefits for retirees under a health and welfare trust and other relief.
 
 
 6
 A collective bargaining agreement between the appellee unions and employers had been amended in a manner which permitted the trustees to decrease the benefits of a health and welfare trust known as the Dairy Industry Trust Fund. In amended complaints the appellee unions and employers and the trustees of the Fund (comprised of an equal number of union and employer representatives), were all named as defendants. Following discovery all filed motions for summary judgment. The motion of the trustee was denied, and the class action against the trustees is pending. The district court granted the motions of the unions and employers. We affirm.
 
 Factual Background
 
 7
 The material facts are not disputed. Turner worked as a driver-salesman for several employers in the Bay Area dairy industry for 24 years before his retirement in 1970. He worked for Berkeley Farms his last eight years. The terms and conditions of his employment had been governed by succeeding collective bargaining agreements between Berkeley Farms and Teamsters Local No. 302. In 1964 the collective bargaining agreement provided for the establishment of the Joint Council No. 7 Dairy Industry Fund to provide medical and hospital benefits for employees retiring after April 1, 1964.
 
 
 8
 Collective bargaining agreements between the dairies and the unions executed in 1966, 1968, 1970, 1971 and 1974 contained a clause whereby the employer agreed to maintain the benefits "in effect" on the date of the agreement, "throughout the term of this agreement". In 1971 and 1974 it was agreed that the necessary amount of the contributions, based on the number of employee work hours, was to be determined by the trustees of the Fund, as required to maintain the benefits then in effect. The 1974 agreement was executed on April 1, 1974 for a term of three years.
 
 
 9
 In July, 1973, Teamsters Local No. 302 and Berkeley Farms, together with the other appellee unions and employers, formed the Dairy Industry Trust Fund from several smaller trusts, including the Joint Council Trust, to administer health and welfare programs. There are ten trustees, five selected by the participating unions, and five by the participating employers. The Trust Agreement provides, Inter alia, that the trustees have authority "to increase the benefits available under any of the programs . . . if in (their) judgment there are sufficient sums in the Fund," and "to decrease benefits under any of the programs . . . if in (their) judgment such action is warranted". (Article IV Section 6)Financial problems for the retiree benefit program became apparent in 1973 and 1974. The program reserves dropped from $197,323.30 to $10,674.15 between September 1, 1973, the date the Dairy Trust assumed administrative responsibility, and December 31, 1974. It appeared that the Fund would be depleted within a few weeks after January 1, 1975.
 
 
 10
 The financial problems of the Fund were attributable to changes in the distribution system of the dairy industry. There were fewer active employees while there were more retired employees.[1] Because the employers' contributions to the Fund were based on the number of employee hours worked, monthly contributions were inadequate to match the current expenditures for retirees' benefits.
 
 
 11
 The parties to the collective bargaining agreement determined that the financial problems of the Fund could be resolved best by amending the collective bargaining agreement to increase the employers' contribution rate to the Fund and by deleting the agreement which required maintenance of the present level of benefits for retirees. The trustees of the Fund were given authority to provide health and welfare benefits within the limits of funds available for that purpose.
 
 
 12
 Active union members approved the amendment to the 1974 collective bargaining agreement in November, 1974. The Teamsters constitution prohibits retirees from voting.[2] The trustees of the Fund then modified the benefits to which the retirees were entitled. Eyeglass and life insurance benefits were eliminated, the maximum payment on other benefits was reduced, and a $20.50 a month charge was imposed on retirees and their spouses who were not covered by Medicare if they wished to continue under the program. Appellant and other retirees covered by the fund were informed of the reduction in benefits in December, 1974.
 
 Proceedings in District Court
 
 13
 In his original complaint Turner named only Berkeley Farms as defendant. In amended complaints the remaining defendants were added. Turner alleged that before his retirement he was told by an official of Local No. 302 that if he retired he would receive the same medical and hospital benefits which he had as an active employee. This was true with respect to the retiree program then in effect. He alleged further that he was unaware at any time of the provision in the trust agreement authorizing the trustees to decrease benefits under the retirees fund.
 
 
 14
 The amended complaints were based on Sections 301 and 302 of the LMRA, 29 U.S.C. §§ 185 and 186. Section 301 provides that suits for "violation of contracts between an employer and labor organization" may be brought in federal district court. Appellant alleged that the appellee labor organizations and employees, by amending the collective bargaining agreement, violated the "vested" right of the retirees to receive the benefits originally provided in the agreement. Appellant further alleged a violation of Section 302, which provides, Inter alia, that a jointly administered trust fund must be maintained "for the sole and exclusive benefit of the employees . . . ".[3]
 
 
 15
 In entering summary judgment in favor of the appellee labor organizations and employers, the district court concluded in his remarks in open court:
 
 
 16
 . . . it does not seem to me, under the law, the activities that have been alleged to be wrong were not forbidden by any contractual legal provision and that there simply has not been, on what seems to be the undisputed evidence, any basis to the claims that are made.
 
 Contentions on Appeal
 
 17
 Appellant contends that (1) the contract between the unions and employers gave the appellant-retiree a vested contractual right to a fixed level of health and welfare benefits, and the unions and employers could not, under the applicable federal common law of labor contracts, extinguish vested rights without the consent of the retirees; and (2) in agreeing to the amendment to the collective bargaining agreement the appellee unions violated § 302(c)(5) of the LMRA in that it rendered the trust fund not for the "sole and exclusive use of the employees".
 
 Summary Judgment
 
 18
 Summary judgment is appropriate where no material issues of fact exist and where a party is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P. Although the district court granted summary judgment without an explanatory memorandum, it is proper to affirm a summary judgment on any ground that appears from the record, whether or not the trial court relied on it. Helena Rubenstein, Inc. v. Bau, 433 F.2d 1021 (9 Cir. 1970); Sellers v. Regents of University of Cal., 432 F.2d 493 (9 Cir. 1970), Cert. denied 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971).
 
 I. § 301 of the LMRA
 
 19
 Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, reads in part:
 
 
 20
 (a) Suits for Violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . . (Emphasis added).
 
 
 21
 The central question presented is whether appellant and other retirees had a vested contractual right in the collective bargaining agreement and the appellee unions and employees violated that right in amending the agreement without the consent of the retirees.
 
 
 22
 In Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the Court held that retirees were not employees for collective bargaining purposes and could not be included within the bargaining unit. The opinion recognizes that the union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits. 404 U.S. at 173, 92 S.Ct. 383. Moreover, even though retirees may be included in health and welfare contracts, "(h)aving once found it advantageous to bargain for improvements in pensioners' benefits, active workers Are not forever thereafter bound to that view or obliged to negotiate on behalf of retirees again." (Emphasis added.) Id. at 181, 92 S.Ct. at 398. In a footnote the Court states that, "This does not mean that when a union bargains for retirees which nothing in this opinion precludes if the employer agrees the retirees are without protection. Under established contract principles, Vested retirement rights may not be altered without the pensioner's consent . . . . The retiree, moreover, would have a federal remedy under § 301 of the Labor Management Relations Act for breach of contract if his benefits were Unilaterally changed." (Emphasis added.) Id. at 181 n. 20, 92 S.Ct. at 398-399.[4]
 
 Vested Retirement Rights
 
 23
 Appellant contends that the collective bargaining agreement, the trust agreement and the Fund eligibility rules are so integrated that the retirees have contractual rights beyond the 1974 contract " vested retirement rights" that cannot be amended without their consent. Appellees recognize that vested Pension rights may not be altered without the consent of the retirees. They argue, however, that there is a "vast difference between a pension plan and a health and welfare program".[5] Pensions are paid from an actuarily predetermined fund and are guaranteed for life. Health and welfare benefits are negotiated periodically and are paid from a fund consisting of employer contributions and last only the life of the collective bargaining agreement.
 
 
 24
 Appellant does not contend that his pension itself is threatened. He has met all the eligibility requirements. Vesting of pension rights occurs when all the eligibility requirements of a voluntary noncontributory pension plan have been met, and the retiree may not therefore be divested of his rights.[6] Under Allied Chemical, supra, it is clear that appellant's consent would be required to deprive him of any of his vested pension rights. There is no suggestion, however, that these rights have been impaired or threatened.
 
 
 25
 The record of the successive collective bargaining agreements shows that appellant's rights to the health and welfare benefits were not vested. They could be terminated at the end of any one of the collective bargaining agreements. None of the documents establishing the health and welfare benefits made any representation as to the length of the period during which these benefits would continue to be paid, other than "throughout the term of this agreement".[7] Under the express provisions of the Trust Agreement the trustees had the right in their discretion to decrease the benefits. Allied Chemical, supra, made clear that retirees' benefits are not a mandatory subject of collective bargaining. The retirees' benefits were subject to termination at the end of any of the collective bargaining agreements.[8]
 
 
 26
 Amendment to Collective Bargaining Agreement
 
 
 27
 It is true that the unions and employers amended the 1974 agreement before it expired. Appellant argues that this was a breach of contract, relying upon the footnote from Allied Chemical, quoted Supra. The footnote, however, refers to a "unilateral" change in benefits. Here the amendment was made by all of the parties to the agreement, i. e., both employees and unions, after approval by the union membership.
 
 
 28
 Collective labor agreements were not generally regarded at common law as contracts in the strict sense of the word, largely because they lacked one or more of the traditional elements generally considered essential to create a binding agreement, such as consideration. Williston, Contracts § 1020, pp. 244-245 (3d ed. Jaeger 1967). However, in the great majority of jurisdictions, collective labor agreements have gradually achieved the status of contracts and a labor agreement is to be treated like any other. Id. at pp. 250-256.[9] Of necessity, however, collective bargaining agreements must be flexible and subject to change. As the Court said in United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960), a collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate". It is frequently necessary to modify a contract to meet changing conditions.
 
 
 29
 We find nothing in the language of the 1974 collective bargaining agreement which would prevent amendment by the unions and employers. In Watson v. Teamsters, 399 F.2d 875 (5 Cir. 1968), a § 301 action was brought by a group of employees to compel their employer and union to comply with provisions of a collective bargaining agreement which provided that employees would be granted seniority status after 30 days of employment. The court upheld a modification of the contract by the employer and union which placed the employees in a "casual status" and kept them from attaining seniority status after 30 days. In sustaining the right of the employer and union to amend the contract, the court said:
 
 
 30
 A collective bargaining contract operates prospectively over a substantial period of time and the parties cannot be expected to foresee all the problems that will develop in an industrial establishment within the period of the contract and more scope must be left for decisions made in the course of performing the agreement. The parties to the collective bargaining agreement share a degree of mutual interdependence for the cost of disagreement is great and the pressure to reach agreement is so intense that the parties are willing to contract with the thought in mind of working out the problems of interpreting and amending when the inevitable problems arise.
 
 
 31
 The case law is clear that an oral agreement between the parties to a collective bargaining contract may modify, supplement or amend the collective bargaining contract.[10] 399 F.2d at 879.
 
 
 32
 We conclude that the amendment to the 1974 collective bargaining agreement by the appellee unions and employers did not constitute a breach of the contract. The health and welfare benefits were not vested property rights but were instead contractual rights subject to amendment by the parties to the agreement.[11]II. § 302(c)(5)
 
 
 33
 Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, generally prohibits employer payments to employee representatives and receipt of such payments by the representatives. An exception is made in subsection (c)(5) with respect to payments to a trust fund established by the representative "for the sole and exclusive benefit of the employees of such employer . . ." Appellant contends that the union appellees in negotiating the amendment to the 1974 collective bargaining agreement authorizing reduction in the retirees' benefits, "rendered the Dairy Industry Trust Fund not for the 'sole and exclusive benefit' of retirees in violation of Section 302(c)(5)". The appellee unions argue that (1) the court lacks jurisdiction under § 302; and (2) if the court has jurisdiction, the undisputed facts do not support appellant's claim that there has been a violation of § 302(c)(5).
 
 Jurisdiction
 
 34
 The courts have recognized a distinction for the purpose of § 302 jurisdiction between "structural deficiencies," which establish jurisdiction, and "fiduciary administration deficiencies," which fail to establish jurisdiction over § 302 trusts.[12] This court has held that "jurisdiction is limited to so-called 'structural' deficiencies and does not extend to day-to-day fiduciary administration of welfare and pension funds". Wilson v. Board of Trustees, 564 F.2d 1299, 1300 (9 Cir. 1978).
 
 
 35
 We agree with appellant that his claim falls within the "structural" deficiency category, and that the district court accordingly had jurisdiction. See Local Union No. 5, etc. v. Mahoning & Trumbull, etc., 541 F.2d 636, 638, and n.2 (6 Cir. 1976), where the court held that the district court clearly had jurisdiction of a purported (c)(5) violation in an action by a union local and its business manager against a multi-union employer-funded trust, seeking declaratory and injunctive relief against an amended eligibility rule and authority to withdraw from the fund without forfeiting prepaid eligibility coverage.
 
 
 36
 Here the change in the funding requirements led to a change in benefits, which included the election by certain beneficiaries, including appellant, to either make monthly payments to the fund or withdraw from the plan. We conclude that this constituted a "structural" change in the plan rather than a "day-to-day fiduciary administration" of the funds. The district court had jurisdiction under § 302(c)(5) for the alleged structural violation.
 
 Sole and Exclusive Benefit Provision
 
 37
 The dominant purpose of § 302 is to prevent employers from tampering with the loyalty of union officials and to prevent union officials from extorting tribute from employers. Alvares v. Erickson, supra, 514 F.2d at 164. Appellant contends he has a cause of action against the unions as well as the trustees, since the unions allegedly dominated the trustees and the unions agreed to the amendment of the collective bargaining agreement.
 
 
 38
 Appellant relies on Nedd v. United Mine Workers of America, 556 F.2d 190 (3 Cir. 1977), Cert. denied 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978), an action by pension coal miners against the pension fund trustees and union, where the court found that the allegation of union domination established a § 302 cause of action against the union. The pensioners claimed that during a period when alleged operator deficiencies were allowed to accumulate, there was a "structural" violation of § 302(c)(5) in that the union designated trustees were a majority. The court agreed that this violation of the statute requiring equal representation gave rise to a federal common law cause of action for breach of fiduciary duties made possible by fact of union domination. Here, however, the statutory requirement of equal representation has been met, and there was no union domination in the trustee membership.
 
 
 39
 In determining whether there has been a violation of the "sole and exclusive benefit" requirement, we are of course concerned with the question of whether the action of the unions was arbitrary, unreasonable and nonfiduciary.[13] Where there is no intimation of bribery, extortion, or union misuse of funds that would strike at the purposes of § 302, and an amended rule is adopted by trustees in their legitimate interest of protecting the "long-term viability" of the fund and the trust fund is not used for the benefit of anyone other than employees of the contributing employers, the amended rule does not violate § 302(c)(5). Local Union No. 5, etc. v. Mahoning & Trumbull, etc., supra.
 
 
 40
 We recognize that as a general rule the question of whether amendments to collective bargaining and trust agreements are arbitrary, unreasonable, or in violation of fiduciary duties is a fact question which may not properly be resolved by summary judgment. Here, however, under the undisputed facts we cannot find a violation of § 302(c)(5). There is no allegation or proof that union officials have extorted funds for their own use or that the union has misused the funds or otherwise acted disloyally. See Alvares v. Erickson, supra. While the amount contributed to the Trust Fund has been reduced, whatever money is paid into the fund is still for the sole and exclusive benefit of the retired employees of the contributing employers.
 
 
 41
 Under Rule 56(e), F.R.Civ.P., an adverse party in opposing a motion for summary judgment "may not rest upon the mere allegations . . . of his pleading", but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial". When a movant submits an adequately supported motion for summary judgment, "the burden of proof falls to the opposing party, who must come forward with facts, and not allegations, to controvert the moving party's case". Town House, Inc. v. Paulino, 381 F.2d 811, 814 (9 Cir. 1967). "It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality." Doff v. Brunswick Corporation, 372 F.2d 801, 805 (9 Cir. 1967), Cert. denied, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967).[14] Appellant's mere allegation that the amendment of the collective bargaining was not for the "sole and exclusive benefit" of the employees because it was arbitrary or capricious, without more, is not enough to prevent summary judgment.
 
 Conclusion
 
 42
 We conclude that the district court properly granted summary judgment for the appellee unions and employers.
 
 
 43
 AFFIRMED.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 When the retiree program was initiated in 1964, there were approximately 4,000 active employees covered by the collective bargaining agreement. This number had dropped to 1850 in 1974, and the number of retired employees increased to 706, 305 of whom were under 65 years of age
 
 
 [2]
 The right of retirees to vote may be restricted to the extent provided by the union's constitution and bylaws. 29 C.F.R. § 452.93 (1978)
 
 
 [3]
 There were further allegations based on state law, over which the district court was alleged to have pendent jurisdiction
 
 
 [4]
 Appellees do not question the Standing of appellant, as a beneficiary under the retiree plan, to bring this action under § 301. This court has recognized that retirees may sue under § 301 to enforce pension rights. Rehmar v. Smith, 555 F.2d 1362 (9th Cir. 1977). See also Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)
 
 
 [5]
 Appellees note the distinction between pension and health and welfare benefits made by the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001 et seq. The act distinguishes between a "welfare plan", 29 U.S.C. § 1002(1), which provides medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, death or unemployment, and a "pension plan," 29 U.S.C. § 1002(2), which provides retirement income to employees or results in a deferral of income for periods extending to the termination of covered employment or beyond. Pension plans must meet participation, benefit accrual, and Vesting requirements based on age and length of service under 29 U.S.C. §§ 1051 through 1061, while welfare plans do not have to do so. 29 U.S.C. § 1051(1)
 
 
 [6]
 See Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Board of Education of Louisville v. City of Louisville, 288 Ky. 656, 157 S.W.2d 337 (1941). See also Wilson v. Board of Trustees, 564 F.2d 1299, 1300 (9 Cir. 1977) where pension disability benefits were denied for failure to comply with the requirements of the Trust Fund
 
 
 [7]
 The collective bargaining agreement in effect when appellant retired in April, 1970 contained the following provision:
 Sec. 2. The employer agrees to maintain the benefits in effect as of April 1, 1968 throughout the term of this agreement.
 The next agreement effective June 1, 1970 contained the same provision.
 
 
 [8]
 Unlike the pension plan in Hurd v. Hutnik, 419 F.Supp. 630, 640 (D.C.N.J.1976) there is no evidence that appellant was advised by the collective bargaining agreement, the trust agreement, or any plan brochure that health and welfare benefits would be paid for the rest of his life. Moreover, Hurd and other cases upon which appellant relies involved pension rather than health and welfare plans
 
 
 [9]
 See also Alvares v. Erickson, 514 F.2d 156, 161 (9 Cir. 1975), Cert. denied, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975)
 
 
 [10]
 Citing: Roadway Express, Inc. v. General Teamsters Local Union 249, 330 F.2d 859 (3 Cir. 1964); N.L.R.B. v. Local Union 825, Operating Engineers, 315 F.2d 695 (3 Cir. 1963); Rabouin v. N.L.R.B., 195 F.2d 906 (2 Cir. 1952)
 
 
 [11]
 Appellant also relies upon a brochure called the DIT Fund's "Health and Welfare Plan", prepared after the trustee had promulgated rules and benefit levels. The brochure was mailed to all beneficiaries. It correctly set forth the retirees' benefits payable in 1973 when the brochure was published. The brochure did not call attention to the provision in the trust agreement authorizing the trustee to decrease benefits. Nor did it contain any statement that the benefits were guaranteed for life or any stated period. This brochure was issued three years after appellant had retired. It did not alter the contractual obligations of either the collective bargaining agreement or the trust agreement
 In Gallo v. Howard Stores Corp., 145 F.Supp. 909 (D.C.Pa.1956), aff'd 250 F.2d 37 (3 Cir. 1957), it was held that an employee could not assert any right under an inaccurate description of his employer's plan contained in a booklet which was distributed long after the employee had applied for and been accepted for membership in the plan. The court said no reasonable man in the employee's position could have understood that the employer intended by such a booklet to change the master contract which governed the pension plan. The same is true here. No reasonable man in appellant's position could have understood that the brochure was intended to alter the provisions of either agreement.
 
 
 [12]
 See, E. g., Alvares v. Erickson, supra, 514 F.2d at 165, and cases there cited
 
 
 [13]
 See, E. g., Hicks v. Pacific Maritime Asso., 567 F.2d 355, 358 (9 Cir. 1978); Wilson v. Board of Trustees, supra, 564 F.2d at 1301
 
 
 [14]
 See also First Nat. Bank v. Cities Service, 391 U.S. 253, 288-290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); British Airways Bd. v. Boeing Co., 585 F.2d 946, 951 (9 Cir. 1978); Stansifer v. Chrysler Motors Corporation, 487 F.2d 59, 63 (9 Cir. 1973)