Richard ("Dick") SHULTZ, Plaintiff,

v.

Robert SUNDBERG, James ("Jim") Vaden, Lawrence ("Larry") Mix, Jalmar ("Jay") Kerttula, William ("Bill") Sheffield, Norman ("Norm") Gorsuch and Daniel W. ("Dan") Hickey, Defendants.

No. A83–303 CIV.

United States District Court,
D. Alaska.

Jan. 13, 1984.

Edgar Paul Boyko, Boyko, Davis & Dennis, Anchorage, Alaska, for plaintiff.

Jonathan K. Tillinghast, Birch, Horton, Bittner, Pestinger & Anderson, Susan A. Burke, Gross & Burke, Juneau, Alaska, George N. Hayes, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, Alaska, for defendants.

MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on defendants' motions to dismiss and for summary judgment. The court heard oral argument on December 2, 1983.

### I. Procedural Background.

Defendant Senator Jalmar Kerttula moved to dismiss plaintiff's complaint or, alternatively, for summary judgment on July 19, 1983 (Docket # 10). The then remaining defendants, Vaden, Mix and Sundberg (the DPS defendants), made similar motions on July 29, 1983 (Docket # 12). Plaintiffs amended their complaint on August 16, 1983 to add defendants William Sheffield, Governor of the State of Alaska, Norman Gorsuch and Daniel Hickey (the Executive defendants) and to add allegations of fact related to the § 1985(3) claim. Defendant Kerttula and the DPS defendants renewed their motions to dismiss and for summary judgments. The Executive defendants joined in the renewed motions. The plaintiffs have filed an opposition to the initial and renewed motions.[1]

### II. Factual Background.

This action involves claims by a member of the Alaska State House of Representatives for damages allegedly suffered when he was compelled to attend a joint session of the Alaska State Legislature convened for the purpose of considering the Governor's nominees for various state cabinet positions. Governor Sheffield called for a joint session of the Alaska Legislature on June 3, 1983 following efforts by the Alaska House of Representatives to adjourn without acting on the Governor's nominees. The joint session, convened on June 7, 1983, was adjourned until 10:00 AM June 8 for want of a quorum. Prior to reconvening the joint session the defendants discussed the enforceability of an order issued by the Governor to compel attendance at the joint session. Upon reconvening, Senate President Kerttula signed an order compelling the attendance of absent members and directing the Sergeant-at-Arms to obtain the assistance of the DPS in compelling the attendance of absent legislators. After a minimum show of force, which may have

1. Plaintiff Fuller withdrew from this lawsuit on December 28, 1983.

included touching, the plaintiff attended. A quorum was determined to be present and the Governor's nominees were considered and approved. The amended complaint alleges violations of plaintiff's civil rights under color of state law, 42 U.S.C. § 1983, a conspiracy to violate plaintiff's civil rights, in violation of 42 U.S.C. § 1985(3), and for common law torts of assault and battery, false arrest and false imprisonment.

### III. Defendant Kerttula's Motion to Dismiss for Failure to State a Claim or, Alternatively, for Summary Judgment.

#### a. Preliminary Issues

Because the court has considered matters, including an affidavit submitted by the plaintiff, outside the pleadings the motion shall be treated in the alternative proposed by defendant Kerttula as one for summary judgment. It is abundantly evident from the plaintiff's ninety-four page opposition and the hundreds of pages of affidavits and other evidentiary materials submitted that plaintiff has had a reasonable opportunity to present materials pertinent to a motion for summary judgment.

#### b. Absolute Immunity for Acts Within the Legitimate Sphere of Legislative Activity

■ This court will affirm a grant of summary judgment "only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the appellant, that there are no genuine issues of material fact and that appellee is entitled to prevail as a matter of law." *International Ladies Garment Workers Union v. Sureck*, 681 F.2d 624, 629 (9th Cir.1982) (citations omitted). The moving party has the burden of showing that no genuine issue of material fact exists. *Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981). After such a showing, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e);

*Turner v. Local Union No. 302, Int'l Brotherhood of Teamsters*, 604 F.2d 1219, 1228 (9th Cir.1979).

■ State legislators enjoy absolute immunity from suits for damages by individuals alleging violations of 42 U.S.C. § 1983 when their conduct occurs in a field where legislators traditionally have the power to act. *Tenny v. Brandhove*, 341 U.S. 367, 379, 71 S.Ct. 783, 789–90, 95 L.Ed. 1019 (1951).

The test generally posed for proposed immunity is whether the activity took place in a session of the House by one of its members in relation to the business before it. *See Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L.Ed. 377 (1880); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503, 95 S.Ct. 1813, 1821, 44 L.Ed.2d 324 (1975). In *Eastland*, the Supreme Court stated:

> More specifically, we must determine whether the activities are 'an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

421 U.S. at 504, 95 S.Ct. at 1821–22, *quoting Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972).

■ One of the policies underlying absolute legislative immunity is to remove from legislators engaged in legitimate legislative activity the burden of defending themselves from law suits. *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427–28, 18 L.Ed.2d 577 (1967). Accordingly, where the undisputed facts are sufficient to establish that a legislator's actions occurred within the sphere of legitimate legislative activity, summary judgment is appropriate. *See Dombrowski v. Burbank*, 358 F.2d 821, 824–26 (D.C.Cir.1966), *affirmed in pertinent part sub nom. Dombrowski v. Eastland*, 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967).

The court finds no genuine issues with respect to the following facts:

1. The Alaska Constitution, Art. III, § 17 provides: "Whenever the governor considers it in the public interest, he may convene the legislature, either house, or the two houses in joint session."

2. On June 3, 1983 by proclamation and citation to the section of the Alaska Constitution set out above, Governor Sheffield called a joint session of the Alaska Senate and House of Representatives. Pl.'s 2nd Opp, Ex. 15.

3. At 10:10 a.m. on June 8, Senate President Kerttula issued an order that certain absent members attend a joint session of the Alaska Legislature "now reconvened." Kerttula further ordered the Sergeant-at-Arms to obtain assistance from the Department of Public Safety to secure the absent members' attendance. Defendant Kerttula Memorandum, Ex. A.

4. The Speaker of the House was not present at the joint session in which Kerttula ordered absent members to attend. Kerttula's Reply Mem, at 7 n. 7.

5. Defendants Mix and Vaden[2] acting under the supervision of defendant Sundberg and upon the order of defendant Kerttula went to the plaintiff's office on June 8. Plaintiff was taken by the arm and escorted out of his office. Defendants conducted themselves "as gentlemen" in compelling the plaintiff to leave his office and attend the joint session. Affidavit of Mix, Affidavit of Holmes, ¶¶ 5, 7.

■ On the basis of these undisputed facts, the court concludes that defendant Kerttula's action in ordering the attendance of absent House members lies within the sphere of legitimate legislative activity and, accordingly, this defendant is entitled to absolute immunity from civil suit. Defendant Kerttula's action took place on the floor of the Senate in an effort to convene a joint session. The business before the Legislature, a confirmation vote on the Governor's proposed appointees, was clearly legislative in nature. Moreover, an act to compel the attendance of other legislators at a legislative session is an integral legislative function. *Cf. Eastland*, 421 U.S. at 505, 95 S.Ct. at 1822 (power to investigate using compulsory power of subpoena process is legitimate legislative activity); *Keefe v. Roberts*, 116 N.H. 195, 199, 355 A.2d 824, 827 (1976) (acts of securing quorum by compelled attendance is part of legislative process).

■ The court notes that challenges to the constitutionality of this defendant's actions have been raised. Questions whether the Senate President can act as the presiding officer of a joint session of the Alaska Legislature in the absence of the Speaker of the House's presence and whether, in a bicameral legislature, one house may propound orders upon the other or whether the Governor may convene a joint session at all may raise significant state issues but have no bearing on Kerttula's acts once it is determined that the acts are within the sphere of legitimate legislative activity. *See Doe v. McMillan*, 412 U.S. 306, 312–13, 93 S.Ct. 2018, 2024–25, 36 L.Ed.2d 912 (1973) (inclusion by Members of Congress of names of children investigated may be unconstitutional and yet lie within legislative sphere).

■ Plaintiff also asserts that the presence of genuine issues of material fact precludes summary judgment in Kerttula's favor. The facts assertedly at issue, however, are not material to the question of Kerttula's immunity. Whether Kerttula was acting in furtherance of a conspiracy when he ordered the arrest of the plaintiffs on his authority as President of the Senate (*see* Pl. 2nd Opp, § VIII, at 60) is immaterial because the court need not look to the motives alleged to have prompted Kerttula's action. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508, 95 S.Ct. 1813, 1824, 44 L.Ed.2d 324 (1975). *See also Tenny v. Brandhove*, 341 U.S. at 377, 71 S.Ct. at 788. Moreover, it is immaterial

---

**2.** Defendant Vaden and Affiant Holmes differ in their recollections of Vaden's participation in Shultz' "arrest." For the purposes of this motion, the court *assumes* the facts as stated by Holmes.

where and when Senate President Kerttula "conspired," i.e., decided to order the Sergeant-at-Arms, with the assistance of State Troopers, to compel Shultz's attendance, since the court concludes, as a matter of law, that a legislator's decision to take an action, i.e. order attendance, enjoys no less protection from judicial inquiry than the order itself. Where, as here, the court has concluded that the Senate President's order directing compelled attendance is an act within the traditional sphere of legislative activity, the decision to take that action must be immunized as well in order to give effect to the policy of immunity. Similarly, whether Kerttula's order compelling attendance was part of a conspiracy to prevent legislative investigation of Governor Sheffield appointees is a fact issue immaterial to legislative immunity so long as Kerttula's order fairly may be deemed to be within the legitimate legislative sphere. *See Eastland,* 421 U.S. at 508, 95 S.Ct. at 1824.

IV. Defendants Sundberg, Vaden and Mix's Motion for Summary Judgment—Absolute Immunity.

■ Defendant Sundberg is the commissioner of the Department of Public Safety. As such he is the executive officer of the Alaska State Troopers. Defendants Vaden and Mix are state troopers. Vaden and Mix allegedly laid hold of the plaintiff, detained or placed him under arrest and compelled him to proceed into the Senate chamber on June 8. Amended Complaint, para. 25. Defendant Sundberg allegedly supervised and controlled these acts. Amended Complaint, para. 28.

These defendants claim they, too, enjoy absolute immunity for acts within the legitimate legislative sphere inasmuch as they performed as aides of Senator Kerttula in taking acts essential to the legislative function. In *Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) the Supreme Court ruled that a United States Senator's aide was entitled to legislative immunity to the same extent as the legislator insofar as the conduct of the legislator would be a protected act if performed by the member himself. 408 U.S. at 618, 92 S.Ct. at 2623–24. In so holding the Supreme Court distinguished *Kilbourn v. Thompson,* 103 U.S. 168, 198, 26 L.Ed. 377 (1881). In *Kilbourn,* the Supreme Court held that the Speech and Debate clause protected House Members who had adopted a resolution authorizing Kilbourn's arrest but held to answer the sergeant-at-arms who executed the arrest. The Supreme Court reasoned in *Gravel* that a Senator's aide was more akin to a Senator than to a sergeant-at-arms in compulsion or arrest situations and, accordingly, would have been entitled to immunity. In making the distinction, however, the Supreme Court mapped a discernible line between the issuance of an order of questionable legality and its execution. According to the Supreme Court, since "no prior case has held that [legislators] would be immune if they executed an invalid resolution by themselves carrying out an illegal arrest," the arrest itself would be unprotected.[3] *Gravel,* 408 U.S. at 621, 92 S.Ct. at 2625. The court is persuaded by the facts and holding in *Kilbourn* and their discussion in *Gravel* that the defendant Commissioner and Officers Vaden and Mix do not enjoy legislative immunity for their actions in compelling the attendance of the plaintiff.

While such a conclusion may be inconsistent in that it denies legislators and aides immunity to *enforce* the very orders issued with immunity, the Supreme Court acknowledged as much by describing its position as a "decidedly jaundiced view towards extending the clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive control of legislative speech or debate and associated matters . . . ." *Gravel,* 408 U.S. at 620, 92 S.Ct. at 2625.[4]

---

**3.** Earlier, in summarizing *Kilbourn,* the *Gravel* court similarly stated: "That the House could with impunity order an unconstitutional arrest afforded no protection for those who made the arrest." 408 U.S. at 618, 92 S.Ct. at 2624.

**4.** In reaching this conclusion, the court does not find it necessary to imply and expressly declines to rule on the constitutionality of either the Governor's or Senator Kerttula's acts.

V. Defendants Sundberg, Vaden, Mix, Sheffield, Gorsuch and Hickey's Motion for Summary Judgment—Qualified Immunity.

 Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Officials acting at the direction of the legislature enjoy this immunity for acts made in good faith. *Eslinger v. Thomas,* 476 F.2d 225 (4th Cir.1973). State executive officers are also entitled to this qualified or good faith immunity. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

 In *Harlow v. Fitzgerald,* the Supreme Court expressly modified the "good faith" standard previously applied in cases such as *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). The Court eliminated the subjective element of good faith in the qualified immunity defense, noting that the subjective element of the good faith defense has frequently proved incompatible with the Court's policy that insubstantial claims should not proceed to trial. Under the test for official immunity, as modified by *Harlow,* on a motion such as this for summary judgment, the court may determine, "not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 102 S.Ct. at 2739 (footnote omitted).

 Applying that standard, the court concludes that at the time of defendants Sundberg, Vaden and Mix's actions in compelling by appropriate force the attendance of the plaintiff at a joint session of the legislature, the unconstitutionality of Senator Kerttula's order to so act was not clearly established. Accordingly, these defendants could not be fairly said to know that their conduct was unlawful. The court's conclusion rests primarily on the application of Rules 16(e) and Rule 51 of the Uniform Rules, Alaska State Legislature (effective date June 30, 1982). Rule 16(e) provides that the presiding officer of the house may direct the sergeant-at-arms to obtain assistance from the Department of Public Safety to secure the attendance of any missing member." Rule 51 provides, in part, that the president of the senate in the presence of the speaker of the house presides over joint sessions...." While there may be questions to be decided as to the authority of Senator Kerttula to act as presiding officer in the absence of the speaker of the house or a presiding officer pro tem of the House and also to the constitutionality of Governor Sheffield's call for a joint session for the purpose of confirmation, it cannot fairly be said that the law was clearly established that such acts by Senator Kerttula and Governor Sheffield were unconstitutional. Plaintiff asserts that defendants could not have a good faith belief in the legality of their acts because plaintiff's counsel's telegram of June 7 did or should have put them on notice of the illegality of their proposed action. Plaintiff over estimates the effects one might reasonably expect from the telegram. Were the law settled that the Governor and Senate President's actions were unconstitutional and had plaintiff's counsel made citation to such law, such notice might compound the defendants' predicament: It could then be said not only that defendants should have known but that they did know their acts were illegal. Neither supposition above is true, however. As stated earlier, the courts have not settled the unconstitutionality of the acts at issue and counsel's opinion of their unconstitutionality in no way changes the state of the law.

 The courts conclusion applies with equal effect to Governor Sheffield, Attorney General Gorsuch and Assistant Attorney General Hickey. Taking the facts and inferences to be drawn therefrom in a light most favorable to the plaintiff, the court

finds no genuine issues as to material facts and concludes as a matter of law that none of these defendants could reasonably have been expected to know or anticipate any subsequent ruling holding that their acts were illegal.

### VI. Other Defenses to Plaintiff's § 1983 Claim.

In addition to the immunity defenses discussed above defendants have argued that this suit is barred by the 10th and 11th amendments, that plaintiff has failed to assert the deprivation of any constitutional right and, finally, that the court should abstain under the *Pullman* doctrine from ruling in this case. The court declines to address these defenses to plaintiff's § 1983 and § 1985(3) claims.

### VII. Plaintiff's § 1985(3) Claim.

■■■■ Plaintiff alleges in Count 1 of his amended complaint that he is a member of the majority coalition of the Alaska House of Representatives and that the actions taken against him resulted from his membership in that group. Amended Complaint, ¶ 14. Further, plaintiff asserts that the defendants' conspiracy to violate his rights was motivated by an intention to discriminate against members of the coalition. Amended Complaint, ¶ 23. A non-racial, politically motivated conspiracy such as plaintiff alleges does not state a claim under 42 U.S.C. § 1985(3) (Supp.1981) *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* — U.S. —, —, 103 S.Ct. 3352, 3358–60, 77 L.Ed.2d 1049 (1983). Section 1985(3)'s requirement that some racial or perhaps otherwise class-based, invidiously discriminatory animus must lie behind the defendants' actions cannot be satisfied under the facts alleged. *See Scott,* 103 S.Ct. at 3358, *quoting Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The court's dismissal of this count is with prejudice inasmuch as plaintiff had notice of the deficiency of this count prior to filing the amended complaint. From the failure to cure this deficiency the court concludes that no state of facts can be alleged to state a cause of action under § 1985(3).

### Plaintiff's Tort Claims

■■■ This court's jurisdiction over the plaintiff's claims in Count III for assault and battery, false arrest and false imprisonment is pendant. Since the federal claims must be dismissed before trial, the state claims should be dismissed as well, although without prejudice. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, IT IS ORDERED:

(1) THAT defendant Kerttula's motion for summary judgment is granted in that this defendant is entitled to absolute immunity for his acts giving rise to plaintiff's claim under § 1983;

(2) THAT the remaining defendants' motion for summary judgment is granted in that these defendants are entitled to qualified immunity for those acts giving rise to plaintiff's claims against them under § 1983;

(3) THAT the defendants' motions to dismiss plaintiff's claim under § 1985(3) for failure to state a claim upon which relief can be granted are granted;

(4) THAT the defendants' motion to dismiss Count III of plaintiff's amended complaint for lack of jurisdiction is granted;

(5) THAT the Clerk shall prepare a final judgment stating: Counts I and II of plaintiff's amended complaint are dismissed with prejudice. Count III of plaintiff's amended complaint is dismissed without prejudice.