[No. 3975.]

WHIPPLE, SECRETARY OF STATE, v. HARTZELL.

ELECTIONS—POLITICAL CONVENTIONS—PARTY POLICY.

In a contest between opposing factions of a political party over the name and emblem of the party, the question of party policy is not a matter to be considered by the court. The only question to be considered is, which of the rival factions represents the regular and legally organized convention of the party. Where a convention of a political party for a congressional district of the state was regularly called by the legally chosen chairman of the district committee for the purpose of nominating a candidate for congress, and in response to said call the convention assembled composed of delegates from ten out of thirteen of the counties of the district, the nominee of the convention was entitled to be placed upon the official ballot under the name and emblem of the party, notwithstanding the delegates composing the convention disagreed in a matter of party policy with that faction of the state party that had been awarded the name and emblem of the party.

*Review from the District Court of Arapahoe County.*

THIS case was submitted upon an agreed statement of facts, from which it appears that one Charles H. Brierly was, in 1896, elected by the regular convention of the Silver Republican party, chairman of the district central committee of the first congressional district of Colorado, and as such chairman, by authority of the district central committee, issued and published a call for a convention of the Silver Republican party of that district, to meet at Coliseum hall in Denver, at 10 A. M., September 13, 1898, to nominate a candidate for congress.

In pursuance of this call, delegates from ten, out of the thirteen counties which compose the district, assembled at the time and place specified, organized a convention, nominated Honorable John F. Shafroth for representative to the 56th congress, from the first congressional district of Colorado, and adopted the name and emblem of the Silver Republican party, and on the same day filed in the office of the secre-

VOL. XXV—31

tary of state a certificate of such nomination. To this certificate no protest was filed within the time prescribed by statute. Among the delegates constituting this convention were 105 from Arapahoe county who were selected by the Silver Republican county convention presided over by Boothe M. Malone, and known as the "Eddy convention," and four of the delegates elected from Jefferson county. About 10 o'clock in the forenoon of the same day, sixteen delegates from Weld county, ten from Jefferson county, and 105 from Arapahoe county elected by the county convention presided over by John R. Smith, and known as the "Fleming convention," met at Windsor hall in the city of Denver, organized a convention and appointed a committee to nominate a candidate for congress from the first congressional district. Afterwards, and on the 8th day of October, 1898, a majority of the committee so appointed nominated Charles Hartzell as such candidate, and adopted the name and emblem of the Silver Republican party, and filed a certificate of such nomination in the office of the secretary of state. A protest was filed against this certificate, which was sustained by the secretary of state. Upon application to the district court of Arapahoe county this ruling was reversed, and respondent awarded the right to use the name and emblem. The secretary of state brings the case here to obtain a review of this judgment.

Mr. VICTOR A. ELLIOTT, Mr. HARRY C. DAVIS, Mr. JOHN F. SHAFROTH and Mr. J. H. BLOOD, for petitioner.

Messrs. WARD & WARD and Mr. JOHN R. SMITH, for respondent.

MR. JUSTICE GODDARD delivered the opinion of the court.

From the foregoing statement it clearly appears that the convention held at Coliseum hall was the regular and lawful convention of the Silver Republican party of the first con-

gressional district, and that the assemblage at Windsor hall was entirely without authority to represent that party. Yet the court below, while recognizing this, held that because the delegates composing this convention were not in favor of the fusion policy adopted by what is known as the "Broad faction" of the Silver Republican party in the state convention (and to which this court, in the recent case of *Whipple v. Broad, ante,* p. 407, awarded the emblem now in controversy) its nominee was not entitled to be classed thereunder. Under the doctrine of that case, the policy that the convention adopted was not a matter to be considered by the court below in determining the merits of this case; it was there held that the only question for its consideration in an inquiry of this kind is, which of the rival conventions was in fact the regular and legally organized convention of the party, and when that fact is determined there is an end of the controversy; in other words, that a convention composed of a majority of the regularly and lawfully elected delegates under the call, is a law unto itself; and may adopt whatever policy it deems best, and its action in this regard is purely a political question, and is not a subject of judicial inquiry or control.

The contention of the respondent Broad in that case is thus stated by the learned chief justice, who delivered the majority opinion.

" That the decision of a convention of the delegates of a political party with respect to party policy is final and controlling; that the same is purely a political question, over which the courts have no control, their inquiry being limited to a determination of the question as to the regularity of the proceedings of the convention in accordance with the party customs and usages."

And in supporting this contention, he uses the following language:

"In our judgment the courts have no control over questions of party policy, but those must be determined by the party itself in its regularly called and organized convention. With the wisdom of the policy we have nothing whatever to

do; and even though the court may be satisfied that the action complained of is unwise and destructive of the party organization, that is a question solely for the party itself, in its proper convention, and not for the court."

Applying this rule to the undisputed facts in this case, the right of the Coliseum hall convention to certify the nomination of Honorable John F. Shafroth as the representative for congress, from the first congressional district, under the name and emblem of the Silver Republican party, is unquestionably established. The judgment of the district court is therefore reversed, and the cause remanded, with direction to sustain the ruling of the secretary of state.

*Reversed and remanded.*

CAMPBELL, C. J., dissenting.

The learned writer of the foregoing opinion states that the district court, while recognizing the regularity of the Eddy convention which nominated Mr. Shafroth, refused to award that nominee the use of the party name and emblem, because the delegates who composed the convention which nominated him were not in favor of the fusion policy adopted by the Broad faction of the party, to which this court, in the case cited, awarded the emblem in controversy.

While it is altogether immaterial what reason a trial court gives for a right decision, since a poor reason for it does not detract from its correctness, nevertheless, as I shall presently show, the decision of the district court was not based upon this proposition. But for the purpose of the present argument, conceding that the trial court's position has been properly stated, it by no means follows that because the Eddy convention of the Silver Republican party was a regular convention when it met that its nominees are now entitled to a place on the official ballot under the name and emblem of the party which, since the nominations were made, they have expressly repudiated, and, besides, have joined another and hostile party, and become its nominees.

The opinion states that the principle announced in the case from which an excerpt is taken settles this controversy in favor of the petitioner, because therein it was held that a convention, and not the court, has the right to settle questions of party policy. The extract removed, as it is, from its proper setting, itself, as I think, sufficiently shows, but if it was not apparent therefrom still the facts of the case show, that it was the state convention, the highest authority within the organization, whose declaration on questions of party policy, regularity of conventions, and genuineness of nominees, was held to be controlling with the courts. If, however, the language in my opinion was ambiguous or indefinite as to the point in question, it does, as I conceive, fully appear from my dissenting opinion in the case of *Twombly v. Smith*, *ante*, p. 425, that it is that governing body, or convention, of a party known as the state convention which has the power to determine for the party at large and all its subordinate divisions all these questions, and that it is not permissible for a county convention of that party to run counter to the decree of the state convention concerning them, and so, instead of the decision in the *Broad* case, being authority for the conclusion reached by the majority here, its logical conclusion, as illustrated in the *Twombly* case, *supra*, is contrary to it, because the state convention has settled questions of regularity in favor of the Fleming county convention. In addition to this, it is manifest that while in the *Broad* case, referred to, the right to lay down a party policy was decided to be in the state convention of a party, and not in the courts, the right to determine such questions as between the highest authority in a party and one of its subordinate divisions, was not in the case.

That there may be no misunderstanding as to the ground upon which the court below rested its decision, I quote from the language of the court in its opinion which appears in this record:

"I cannot do otherwise than to hold that the convention which nominated Mr. Shafroth was not a convention of the

Silver Republican party.    This holding is based upon the fact that it appears from the agreed statement of facts that this convention was hostile to the Silver Republican party headed by Mr Broad, which has been recognized by our supreme court, and that it was composed of the political party now known as the Teller Silver Republican party; hence, the nominee of that convention belongs to the Teller Silver Republican party and should be classed under that emblem."

The plain import of this language is that Mr. Shafroth, being the nominee of the Teller Silver Republican party which was created by former members of the Silver Republican party, and the new party being antagonistic to the old and the members of the former refusing to recognize, or yield obedience to, the latter, cannot be permitted to enjoy upon the official ballot the right to the use of the name and emblem of the party with which they are not now connected, and to which they owe no allegiance.

In view of these facts, I think the district court was clearly right in awarding the emblem to the respondent.    In my dissenting opinion in the *Twombly* case, *supra*, I have given at length my views upon this phase of the controversy, and as the essential facts there are the same as here, a restatement of the argument now is unnecessary.