Rockingham
No. 7346

WILLIAM F. KEEFE

v.

GEORGE B. ROBERTS, JR.

March 31, 1976

196

*Shaines, Madrigan & McEachern (Mr. Paul McEachern* orally) for the plaintiff.

*Stanley M. Brown,* by brief and orally, for the defendant.

PER CURIAM. This transfer involves the questions (1) whether the speaker of the House of Representatives of the State of New Hampshire has the lawful authority to arrest or order the arrest of any member of the house of representatives in order to secure a quorum; (2) whether the immunity granted to legislative debate and deliberations by part I, article 30 of the New Hampshire constitution affords protection to the speaker in an action based on such arrest, and (3) whether the plaintiff as a member of the house is protected from this arrest under part II, article 21 of the New Hampshire constitution.

The facts of this case are not in dispute. Plaintiff was a representative to the New Hampshire House of Representatives from Portsmouth. Defendant is the speaker of the house. The house convened at 10:00 a.m. on the morning of June 26, 1975, and Representative Keefe was in attendance. At approximately 2:00 in the afternoon, the defendant called a recess, whereupon the plaintiff left the chamber of the house and proceeded to the office of the

Governor. After the recess, while the house was in session, the plaintiff was requested by the sergeant-at-arms to return to the chambers. Upon plaintiff's refusal to return, the sergeant-at-arms departed and returned a few minutes later, informing the plaintiff that he was under arrest by order of the defendant. During this time in the house roll-call votes were being demanded, the presence of a quorum was being questioned, and two motions were made for a call of the house. The plaintiff returned to the chamber and participated in house deliberations. At approximately 4:15 p.m., when the house adjourned, the plaintiff was informed that he was no longer under arrest and that he was free to leave. Plaintiff subsequently brought this action against the defendant for false arrest and false imprisonment. The defendant filed a motion to dismiss which was granted after hearing in the superior court. Plaintiff's exception was reserved and transferred by *Perkins, J.*

There can be no doubt that when a call of the house has been ordered the attendance of members may be compelled. "When a call of the house has been ordered, the doors are promptly closed, and the clerk calls the roll of members and notes the absentees. The list of the members not recorded as present may be verified by calling the names, and the list of absentees is then given to the sergeant-at-arms with instructions to bring in the absent members." P. Mason, Manual of Legislative Procedure § 195 (1970). Upon call of the house, those absent members may be taken into custody by the sergeant-at-arms and returned to the chamber. *See* P. Mason, Manual of Legislative Procedure § 561 (1970); L. Cushing, Law and Practice of Legislative Assemblies §§ 265, 439 (1874).

Although it has been suggested that legislative bodies should adopt a specific rule governing the procedures necessary to order a call of the house (H. Robert, Rules of Order § 39, at 297 (1970)), the New Hampshire House of Representatives has never adopted such a rule. Instead the rules of the house provide that in all cases not specifically covered by the constitution, the rules of the house, or the joint rules, Mason's *Manual of Legislative Procedure* "shall be referred to as the primary guide." Rules of the House of Representatives § 20 (a). In the absence of a rule which specifically sets forth the proper procedure to have a call of the house, there is disagreement among the commentators as to what procedure ought to be followed. It is uncertain from Mason's *Manual* as to whether a vote of those present is necessary for a call of the house. *See* P. Mason, Manual of Legislative Procedure §§ 190-97 (1970). Those sections can be read to allow a call of the house upon request

without a vote of those present. Those members of the house present in the instant action made no objection to the call of the house but acquiesced in the speaker's action.

In fact, the *Journal* of the house covering the period when the events involved in this case occurred indicates that at two different times the house considered that a call of the house was in effect. The *Journal* shows that after a quorum count showing only one hundred and forty members present or no quorum, a representative "requested a call of the House." No vote is recorded on this request, but at some later time the *Journal* shows that on motion the house voted "that the call of the House be removed." Thereafter, the speaker called for the special order on Senate bill 2 and the representative "renewed his request for a call of the House." Three hundred and twenty members were recorded as present. It was moved that the "House remove the call of the House." This motion was adopted. By twice voting to remove the call of the house, the house indicated that it considered a call of the house to have been in effect upon request without a vote having been taken. Under these circumstances, the speaker was acting in a "field where [speakers] traditionally have power to act." *Tenney v. Brandhove,* 341 U.S. 367, 379 (1951).

As the defendant was acting within the scope of his responsibilities as speaker of the house, his actions under the circumstances of the instant case must receive the privilege afforded legislative debate and deliberation. Part I, article 30 of the New Hampshire constitution reads, "The freedom of deliberation, speech, and debate, in either house of the legislature, is so essential to the rights of the people, that it cannot be the foundation of any action, complaint, or prosecution, in any other court or place whatsoever." This article is the equivalent of the speech or debate clause, article I, section 6 of the United States Constitution which insures legislative privilege in the federal system.

This State, in its constitution of 1784 was one of the first to preserve the principle that the legislature must be free to both speak and act without fear of criminal or civil liability. *Tenney v. Brandhove,* 341 U.S. 367, 375 (1951). The cases have read such clauses broadly to effectuate these purposes. *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501 (1975); *Doe v. McMillan,* 412 U.S. 306, 312-13 (1973); *Powell v. McCormack,* 395 U.S. 486, 502-03 (1969). The immunities are intended to protect the integrity of the legislative process by insuring the independence of individual legislators. *United States v. Brewster,* 408 U.S. 501, 507 (1972).

In order to determine whether a particular act, other than literal speech or debate, is protected by the constitutional privilege, it must appear that the legislator acted within the sphere of legitimate legislative activity. The language of the constitution must be read broadly to include any act "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson,* 103 U.S. 168, 204 (1880); *Doe v. McMillan,* 412 U.S. 306, 314 (1973). In articulating which activities are to receive the protection of the legislative privilege, the Supreme Judicial Court of Massachusetts by *Parsons,* C.J., stated, "I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate; but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and in the execution, of the office; and I would define the article as securing to every member exemption from prosecution, for every thing said or done by him, as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular according to the rules of the house, or irregular and against their rules." *Coffin v. Coffin,* 4 Mass. 1, 27 (1808).

The right of a legislative body to have the attendance of all its members and to enforce such attendance, if necessary, is one of its most undoubted and important functions. L. Cushing, Law and Practice of Legislative Assemblies § 264 (1874). The act of the defendant in securing a quorum of the house is thereby consistent with the due functioning of the legislative process and in fact is part of the legislative process itself. As the defendant was acting in the performance of official duties in relation to the business before the house, he must be protected "not only from the consequences of litigation's results but also from the burden of defending [himself]." *Dombrowski v. Eastland,* 387 U.S. 82, 85 (1967). *See also Imbler v. Pachtman,* U.S. No. 74-5435, 44 U.S.L.W. 4250 (U.S. March 2, 1976). We hold that the actions of the defendant in the instant case are protected by the legislative privilege guaranteed in part I, article 30 of our constitution. *See* Cella, *The Doctrine of Legislative Privilege of Speech or Debate: The New Interpretation as a Threat to Legislative Coequality,* 8 Suffolk L. Rev. 1019, 1069 (1974); Reinstein and Silverglate, *Legislative Privilege and The Separation of Powers,* 86 Harv. L. Rev. 1113 (1973).

Plaintiff argues that our constitution provides him immunity from arrest under the circumstances of this case. Part II, article 21 of the New Hampshire constitution provides, "No member of the

house of representatives, or senate shall be arrested, or held to bail, on mesne process, during his going to, returning from, or attendance upon, the court." This type of custody by the sergeant-at-arms at the direction of the speaker attempting to secure a quorum is not the type of arrest which this provision was intended to prevent. *People ex rel. Hastings v. Hofstadter,* 258 N.Y. 425, 180 N.E. 106 (1932).

*Exception overruled.*