**COLORADO COMMON CAUSE, the Colorado affiliate of Common Cause, a District of Columbia nonprofit corporation, Wayne N. Knox, a member of the House of Representatives of the Fifty–Seventh General Assembly of the State of Colorado, and Renita Greenberg, a citizen and taxpayer of the State of Colorado, Petitioners,**

v.

**Carl B. "Bev" BLEDSOE, Paul D. Schauer, Chris Paulson, Carol Taylor–Little, Jeanne M. Adkins, Don Ament, Norma V. Anderson, Steve Arveschoug, Charles E. Berry, Ken Chlouber, Mike Coffman, Charles Duke, Lewis H. Entz, Mary Ellen Epps, Jeanne Faatz, Marleen Fish, Faye Fleming, Tim Foster, Elwood Gillis, Tony Grampsas, Patrick A. Grant, John J. Irwin, William H. Jerke, Stanley F. Johnson, Bill Martin, Margaret Masson, Scott McInnis, Richard F. Mutzebaugh, Betty Neale, David T. Owen, Phil Pankey, Barbara Philips, Tom Ratterree, Jeff Shoemaker, Betty**

Swenson, Shirleen Tucker, John Ulvang, Dan Williams, and Kathi Williams, as members of the House of Representatives of the Fifty–Seventh General Assembly of the State of Colorado, Respondents.

No. 89SC465.

Supreme Court of Colorado,
En Banc.

April 15, 1991.

Rehearing Denied May 20, 1991.

Hill & Robbins, Robert F. Hill, Ronald L. Wilcox, David R. Fine and Rothgerber, Appel, Powers & Johnson, James M. Lyons, Patrick M. Flaherty, Denver, for petitioners.

Welborn, Dufford, Brown & Tooley, P.C., Philip G. Dufford, Gregory A. Ruegsegger, Scott J. Mikulecky, Denver, for respondents.

Chief Justice ROVIRA delivered the Opinion of the Court.

In this C.A.R. 50 certiorari proceeding, the petitioners—a member of the General Assembly's house of representatives, a Colorado citizen, and Colorado Common Cause, a non-profit corporation organized as a "watchdog" for the stated purpose of improving governmental institutions (hereinafter "Common Cause")—seek review of a district court's order dismissing their complaint, which alleged that the respondents, caucus members of the majority party in the house of representatives, violated article V, section 22a, of the Colorado Constitution. Common Cause asserts that the district court erred in dismissing its complaint on the ground that the caucus members-legislators were absolutely immune from suit under the state constitution's speech-or-debate clause, Colo. Const. art. V, § 16. We affirm in part, reverse in part, and remand with directions.

### I

In November 1988 the voters of the State of Colorado adopted article V, sections 22a and 22b, of the Colorado Constitution, effective January 3, 1989. *See* 1989 Colo. Sess.Laws 1664–65. Section 22a, the so-called "GAVEL amendment," an acronym for "Give A Vote to Each Legislator," prohibits members of the General Assembly from committing themselves, or requiring other members to commit themselves, "through a vote in a party caucus or any other similar procedure[ ] to vote in favor of or against any bill ... or other measure or issue pending or proposed to be introduced in the general assembly." Section 22b, the enforcement provision for the GAVEL amendment, provides that any action taken in violation of the GAVEL

amendment shall be null and void. A General Assembly publication analyzing the initiative proposing the GAVEL amendment stated that the amendment was intended to address alleged problems associated with the caucus system used in the General Assembly:

> Party caucuses meet, most often, to consider a position on a bill of major importance, usually involving taxation or expenditures of state funds. Party caucus members often feel compelled to vote with the position decided upon in the party caucus in order to form a majority vote block regardless of personal philosophy. Whether caucus members have been bound to a certain vote or subject to pressure from leadership is a matter of debate. Regardless, the effect of a party caucus position is that floor debate becomes a formality and the arguments of minority party members are rarely given consideration. The result is legislators in the minority party do not have a significant part in the decision-making process.

Legislative Council of the General Assembly, *An Analysis of 1988 Ballot Proposals*, at 20 (1988). The GAVEL amendment became effective January 3, 1989.

On April 3, 1989, the house of representatives received for its consideration Senate Bill No. 245, the so-called "long appropriations bill," which was titled "A Bill for an Act to Provide for the Payment of the Expenses of the Executive, Legislative and Judicial Departments of the State of Colorado, and of Its Agencies and Institutions, for and during the Fiscal Year Beginning July 1, 1989, Except as Otherwise Noted." The majority-party caucus of the house deliberated the appropriations bill from April 4, 1989, through April 12, 1989.[1]

On numerous occasions during the majority-party caucus's deliberations, the caucus recessed and commitments were required and given by majority-party caucus members regarding how they would vote on portions of the appropriations bill when it was considered before the entire house of representatives. Initially the vote commitments were given in the hallway outside the caucus room; subsequently, the commitments were given in the caucus room itself. The appropriations bill was held in caucus until a number of caucus members sufficient to ensure passage on the house floor committed themselves to vote in favor of the bill. The bill became law on April 26, 1989.

From April 27, 1989, through May 2, 1989, the majority-party caucus members deliberated a transportation bill and again sought and obtained vote commitments. This bill, like the appropriations bill, was held in caucus until a number of caucus members sufficient to ensure passage on the house floor committed themselves to vote in favor of the bill. The bill did not become law. Another transportation bill, as well as other items, was scheduled to be considered on June 21, 1989, in a special session convened by the governor.

On May 24, 1989, Common Cause filed a complaint against the majority-party caucus members, seeking a declaratory judgment that the members' vote-commitment activities violated the GAVEL amendment, and an injunction prohibiting the members from further violating the GAVEL amendment. Common Cause also moved for a preliminary injunction prohibiting caucus members from violating the GAVEL amendment during the June 21, 1989, special session or any other session prior to the resolution of the lawsuit. In a brief in support of the motion for preliminary injunction, Common Cause argued that "a real and immediate danger" existed that the caucus members at the June 21, 1989, special session would continue to deprive Common Cause of its constitutional rights under the GAVEL amendment by continuing to seek and obtain vote commitments. Common Cause then served subpoenas on at least six caucus members, requiring that they appear as witnesses at a hearing on Common Cause's motion for a preliminary injunction. The caucus members moved to

---

1. Because the petitioners' complaint was dismissed by the district court pursuant to C.R.C.P. 12, for purposes of this certiorari proceeding we accept as true the allegations of the petitioners' complaint. *See, e.g., Abts v. Board of Educ.,* 622 P.2d 518, 521 (1980).

quash the subpoenas, and to dismiss the complaint pursuant to C.R.C.P. 12(b)(1) and (6).

In ruling on the motions, the district court "emphasize[d] that it [was] not deciding the validity of any legislative action," and ruled that the caucus members, as members of the General Assembly, were entitled to "absolute immunity from this lawsuit" by virtue of the Colorado Constitution's speech-or-debate clause. The district court dismissed the complaint, granted the motion to quash the subpoenas, and denied the motion for a preliminary injunction. Common Cause appealed to the court of appeals and filed pursuant to C.A.R. 50 a petition for certiorari, which we granted before the court of appeals rendered a decision.[2]

## II

We must first determine whether, as the caucus members suggest, the controversy in this case presents the kind of nonjusticiable "political question[ ] the resolution of which should be eschewed by the courts," *Colorado General Assembly v. Lamm*, 704 P.2d 1371, 1378 (Colo.1985).

The judiciary's avoidance of deciding political questions finds its roots in the Colorado Constitution's provisions separating the powers of state government, *see, e.g.,* Colo. Const. art. III, and recognizes that certain issues are best left for resolution by the other branches of government, or "to be fought out on the hustings and determined by the people at the polls." *People ex rel. Tate v. Prevost*, 55 Colo. 199, 212, 134 P. 129, 133 (1913); *accord People ex rel. Attorney General v. Tool*, 35 Colo. 225, 232, 86 P. 224, 226 (1905); *Whipple v. Hartzell*, 25 Colo. 481, 483, 55 P. 186, 187 (1898); *cf. Lamm*, 704 P.2d at 1378–79 (determination of validity of governor's veto is not a political question because it "requires interpretation of the constitution,

a function at the very core of the judicial role"). The "features" that may characterize a case raising a nonjusticiable political question have been most clearly identified in *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), *quoted in United States v. Munoz–Flores*, —— U.S. ——, 110 S.Ct. 1964, 1968, 109 L.Ed.2d 384 (1990):

"Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

*See* Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv.L.Rev. 1, 7–8 (1959) (political question exists when Constitution "has committed to another agency of government the autonomous determination of the issue raised").

The caucus members have not cited any case, and we have found none, suggesting that the question presented in this case—whether the Colorado Constitution's speech-or-debate clause grants legislators absolute immunity from lawsuits alleging that they have violated the GAVEL amendment[3]—is a nonjusticiable political question. The issue before us requires that we interpret two provisions of the Colorado Constitution, the speech-or-debate clause and the GAVEL amendment, to determine their scope and the extent to which each

---

2. The caucus members have not argued that Common Cause lacks standing, and for purposes of this proceeding we assume without deciding that Common Cause does have standing. *See, e.g., Benson v. People*, 703 P.2d 1274, 1277 n. 2 (Colo.1985).

3. Similar issues, concerning the breadth of the speech-or-debate clause, were presented in *Romer v. Colorado General Assembly*, 810 P.2d 215 (Colo.1991), and *Lucchesi v. State of Colorado*, 807 P.2d 1185 (Colo.App.1990), *cert. denied* (1991).

may be effectuated in accordance with the intentions of the framers of our constitution and the people of the State of Colorado.

Our interpreting these provisions in no way infringes on the powers and duties of the coequal departments of our government; moreover, we do not find present any of the political-question characteristics identified by the United States Supreme Court. On the contrary, the issue before us "is one traditionally within the role of the judiciary to resolve," for "it is peculiarly the province of the judiciary to interpret the constitution and say what the law is." *Lamm*, 704 P.2d at 1378 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175, 2 L.Ed. 60 (1803)); *accord Barnes v. Kline*, 759 F.2d 21, 26–27 (D.C.Cir.1985) (when dispute arises concerning the constitutional functions of different branches of government, courts have duty to say what the law is, and this duty may not be avoided simply because one or both parties are coordinate branches of government), *vacated as moot sub nom. Burke v. Barnes*, 479 U.S. 361, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987), *but cited with approval* in *Lamm*, 704 P.2d at 1378; *see also Doe v. McMillan*, 412 U.S. 306, 318 n. 12, 93 S.Ct. 2018, 2027 n. 12, 36 L.Ed.2d 912 (1973) (while inquiry to determine scope of speech-or-debate clause necessarily has separation-of-powers implications because it involves two coordinate branches of government, "the separation of powers doctrine has not previously prevented this Court from reviewing the acts of Congress"). We have decided numerous other cases that have raised issues of whether legislative actions violated statutory or constitutional provisions, and we have not held that the nature of such questions automatically renders them nonjusticiable political questions. *Cf., e.g., In re Legislative Apportionment*, 150 Colo. 380, 383–85, 374 P.2d 66, 68–69 (1962); *In re Speakership of the House of Representatives*, 15 Colo. 520, 523–24, 25 P. 707, 708 (1903). We decline to find that the consti-

tutional issues presented in this case constitute nonjusticiable political questions.

## III

We now consider whether the Colorado Constitution's speech-or-debate clause grants legislators absolute immunity from lawsuits alleging that they have violated the GAVEL amendment. This issue requires that we determine the scope of the speech-or-debate clause and the GAVEL amendment.[4]

### A

We are guided in our consideration of the clause and the amendment by well-settled principles governing construction of constitutional provisions.

▮ It is "common knowledge" that the Colorado Constitutional Convention considered the United States Constitution, *see* "An Irrevocable Ordinance," *in* Proposed Colorado Constitution of 1865, at 10, *reprinted in Constitution's* [sic] (H. Bromwell ed. n.d.); Colorado Enabling Act, ch. 139, § 4, 18 Stat. 474 (1875), *reprinted in* 1A C.R.S., at 44 (1980), and the constitutions of other states in framing the Colorado Constitution. *See White v. Anderson*, 155 Colo. 291, 300, 394 P.2d 333, 337 (1964). This court has long held that the constitution must be construed liberally in view of its purpose.

"Narrow and technical reasoning is misplaced when it is brought to bear upon an instrument framed by the people themselves, for themselves, and designed as a chart upon which every [person], learned and unlearned, may be able to trace the leading principles of government. A constitution is to be construed as a frame of government or fundamental law," and not as a mere statute.

*City and County of Denver v. Mountain States Tel. & Tel. Co.*, 67 Colo. 225, 228, 184 P. 604, 606 (1919), *cert. dismissed* 251 U.S. 545, 40 S.Ct. 219, 64 L.Ed. 407 (1920).

---

**4.** Because we are reviewing the dismissal of a complaint for failure to state a claim, we may examine *de novo* the trial court's ruling, and we are not required to give deference to its ruling.

*See, e.g., Espinoza v. O'Dell*, 633 P.2d 455, 467 (1981), *cert. dismissed*, 456 U.S. 430, 102 S.Ct. 1865, 72 L.Ed.2d 237 (1982); *Bell v. Arnold*, 175 Colo. 277, 281, 487 P.2d 545, 547 (Colo.1971).

A "cogent element" in our construction of general terms of the constitution is the consideration of the object to be accomplished and the mischiefs to be avoided: we are obligated to construe the constitution in such a manner as will prevent an evasion of its legitimate operation. *Institute for the Educ. of the Mute and Blind v. Henderson*, 18 Colo. 98, 104, 31 P. 714, 716 (1892). Each provision of the constitution, both original and amended, should be construed if possible to avoid any conflict between the different parts of the constitution. *E.g., People ex rel. Bentley v. Le Fevre*, 21 Colo. 218, 233, 40 P. 882, 887 (1895). Moreover, specific constitutional provisions control over general provisions. *E.g., de'Sha v. Reed*, 194 Colo. 367, 370, 572 P.2d 821, 823 (1977); *People ex rel. Boatright v. Newlon*, 77 Colo. 516, 521, 238 P. 44, 46 (1925).

## B

Article V, section 16, of the Colorado Constitution, provides:

> The members of the general assembly shall, in all cases except treason or felony, be privileged from arrest during their attendance at the sessions of their respective houses, or any committees thereof, and in going to and returning from the same; *and for any speech or debate in either house, or any committees thereof, they shall not be questioned in any other place.*

(Emphasis supplied.) There is little doubt that our speech-or-debate clause was adopted for the same reasons that similar speech-or-debate clauses were included in most states' constitutions [5] and in the United States Constitution.[6] *See, e.g., Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 732–33, 100 S.Ct. 1967, 1974–75, 64 L.Ed.2d 641 (1980).

The genesis of the speech-or-debate clause is found in the sixteenth and seventeenth centuries, when English monarchs subjected Parliament members to criminal and civil actions to suppress and intimidate them. *E.g., United States v. Johnson*, 383 U.S. 169, 178–79, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966). The language of the speech-or-debate clause is the product of a lineage of free-speech-or-debate guarantees from the English Bill of Rights of 1689 to the first state constitutions.[7] Reinstein & Silverglate, *Legislative Privilege and Separation of Powers*, 86 Harv.L.Rev. 1113, 1136 (1973). The clause is thus firmly rooted in the English and American experience. *See, e.g., Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501–03, 95 S.Ct. 1813, 1820–21, 44 L.Ed.2d 324 (1975); *see generally Johnson*, 383 U.S. at 177–84, 86 S.Ct. at 753–57; Reinstein & Silverglate, *supra*, at 1120–44.

In the context of the American political system, the clause serves as a means of " 'practical security' " for preserving the independence and integrity of the legisla-

5. In addition to Colorado, forty-three state constitutions contain speech-or-debate clauses. *See* Ala. Const. art. IV, § 56; Alaska Const. art. II, § 6; Ariz. Const. art. IV, pt. 2, § 7; Ark. Const. art. V, § 15; Conn. Const. art. III, § 15; Del. Const. art. II, § 13; Ga. Const. art. III, § iv, ¶ 9; Ha. Const. art. III, § 7; Idaho Const. art. III, § 7; Ill. Const. art. IV, § 12; Ind. Const. art. IV, § 8; Kan. Const. art. II, § 22; Ky. Const. § 43; La. Const. art. III, § 8; Md.Decl. of Rights art. 10; Mass. Const. pt. I, art. 21; Me. Const. art. IV, pt. 3, § 8; Mich. Const. art. IV, § 11; Minn. Const. art. IV, § 10; Mo. Const. art. III, § 19; Mont. Const. art. V, § 8; Neb. Const. art. III, § 26; N.H. Const. pt. I, art. 30; N.J. Const. art. IV, § 4, ¶ 9; N.M. Const. art. IV, § 13; N.Y. Const. art. III, § 11; N.D. Const. art. IV, § 15; Ohio Const. art. II, § 12; Okla. Const. art. V, § 22; Ore. Const. art. IV, § 9; Pa. Const. art. II, § 15; R.I. Const. art. VI, § 5; S.C. Const. art. III, § 14; S.D. Const. art. III, § 11; Tenn. Const. art. II, § 13; Tex. Const. art. III, § 21; Utah Const. art. VI, § 8; Vt. Const. ch. I, art. 14; Va. Const. art. IV, § 9; Wash. Const. art. II, § 16; W.Va. Const. art. VI, § 17; Wis. Const. art. IV, § 16; Wyo. Const. art. III, § 16; *see also* N.C. Gen.Stat. § 120–9 (1990).

6. Article I, section 6, clause 1, of the United States Constitution provides that, "for any Speech or Debate in either House, [senators and representatives] shall not be questioned in any other Place."

7. Three states had speech-or-debate clauses in their constitutions before the United States Constitution was ratified. *See* Maryland Declaration of Rights Art. VIII (1776); Mass. Const. part I, art. XXI (1780); N.H. Const. part I, art. XXX (1784).

ture, reinforcing the separation-of-powers system of government in the United States, and "prevent[ing] intimidation by the executive and accountability before a possibly hostile judiciary." *Johnson*, 383 U.S. at 179, 181, 86 S.Ct. at 755; *accord, e.g., Eastland*, 421 U.S. at 502–03, 95 S.Ct. at 1820–21; *Tenney v. Brandhove*, 341 U.S. 367, 372–75, 71 S.Ct. 783, 786–88, 95 L.Ed. 1019 (1951). The clause serves another important function—to which the United States Supreme Court in *Powell v. McCormack*, 395 U.S. 486, 505, 89 S.Ct. 1944, 1955, 23 L.Ed.2d 491 (1969), appeared to assign weight dispositive of the case—shielding legislators from "the cost and inconvenience and distractions of a trial." *Tenney*, 341 U.S. at 377, 71 S.Ct. at 788; *accord Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967).

■ The virtually verbatim adoption by the Colorado Constitutional Convention of the speech-or-debate clause of the United States Constitution indicates that the intent of the members of the constitutional convention and voters who adopted the clause by ratifying the constitution was to ensure that legislators could conduct the business of lawmaking without undue hindrance or fear caused by threatened or pending lawsuits related to their legislative duties. Although we have not previously considered the speech-or-debate clause specifically, *but cf. Romer v. Colorado General Assembly*, 810 P.2d 215 (Colo.1991), we have decided numerous cases concerning legislative immunity to lawsuits, which is founded on many of the same principles as the speech-or-debate clause. In all of these cases, we have unwaveringly held that courts may not interfere with legitimate legislative activities. In *Lewis v. Denver City Waterworks Co.*, 19 Colo. 236, 238, 34 P. 993, 994 (1893), we stated:

It is a general principle in the governmental system of this country that the judicial department has no direct control over the legislative department. Each department of the state government is independent within its appropriate sphere. Legislative action by the general assembly cannot be coerced or restrained by judicial process. As was said in another case by this court, "the legislature cannot be thus compelled to pass an act, even though the constitution expressly commands it; nor restrained from passing an act, even though the constitution expressly forbids it."

*Accord, e.g., Consumers Union*, 446 U.S. at 719–20, 100 S.Ct. at 1968–69; *Eastland*, 421 U.S. at 501–03, 95 S.Ct. at 1820–21; *Doe v. McMillan*, 412 U.S. 306, 312–13, 93 S.Ct. 2018, 2024–25, 36 L.Ed.2d 912 (1973). In *City of Louisville v. District Court*, 190 Colo. 33, 37, 543 P.2d 67, 70 (1975), we stated:

"[A] city council or board of trustees of an incorporated town, when acting, or proposing to act, in a legislative capacity upon a subject within the scope of its powers as conferred by its charter or by the general laws of the state, is entitled to immunity from judicial interference....

. . . .

"*It is an exceedingly delicate matter for the courts to interfere by injunction with the action, or contemplated action, of a legislative body in any case;* and such interference cannot be justified, except in extreme cases and under extraordinary circumstances...."

(quoting *Lewis*, 19 Colo. at 239, 242, 34 P. 993, 994, 995 (1893)) (emphasis in *City of Louisville*). The Colorado Constitution's speech-or-debate clause was amended in 1974 to expand the coverage of the clause to legislative committees.[8] We believe the

---

8. In 1974 the voters of the State of Colorado adopted the General Assembly's proposal that the speech-or-debate clause be amended to add the underlined text: "and for any speech or debate in either house, *or any committees thereof*, they shall not be questioned in any other place." *See* 1974 Colo.Sess.Laws 449–50. The legislative council's interpretation of the proposed amendment, which courts may rely on to help explain the voters' understanding of the amendment when it was passed, *Carrara Place v. Arapahoe County Bd. of Equalization*, 761 P.2d 197, 203 (Colo.1988), referred to this and other proposed amendments in the 1974 election as "minor 'housekeeping' or nonsubstantive amendments ... to revise the order and language of the constitution pertaining to practices, processes, and operations" of the General As-

amendment is consistent with our conclusion that the clause should be construed liberally to prevent judicial and executive interference with legislators in the conduct of their official duties.

█ Notwithstanding the broad scope of the speech-or-debate clause, we cannot agree with the caucus members' "absolute" interpretation of the speech-or-debate clause as prohibiting in all cases the naming of the legislature or legislators as defendants in a civil action. No court has ever held that under the speech-or-debate clause legislators may never be named as defendants, although in most cases legislators-defendants have been dismissed from the cases because the cases require inquiry into protected legislative activity; nor has any court ever held, as the caucus members suggest, that legislative conduct may never be subjected to judicial review. *See, e.g., Powell,* 395 U.S. at 503–06, 89 S.Ct. at 1954–56; *id.* at 505 n. 25, 89 S.Ct. at 1956 n. 25; *Kerttula v. Abood,* 686 P.2d 1197, 1201–05 (Alaska 1984); *Keefe v. Roberts,* 116 N.H. 195, 197–200, 355 A.2d 824, 826–27 (1976); *Mutscher v. State,* 514 S.W.2d 905, 914–15 (Tex.Crim.App.1974). We decline to hold that the speech-or-debate clause automatically requires the dismissal of legislators from a lawsuit that does not impose upon the legislators the "burden of defending themselves," *Powell,* 395 U.S. at 505, 89 S.Ct. at 1956, or that does not challenge legislative acts performed in the "sphere of legitimate legislative activity," *Tenney,* 341 U.S. at 376, 71 S.Ct. at 788.

C

The GAVEL amendment provides:

(1) No member or members of the general assembly shall require or commit themselves or any other member or members, through a vote in a party caucus or any other similar procedure, to vote in favor of or against any bill, appointment, veto, or other measure or issue pending or proposed to be introduced in the general assembly.

(2) Notwithstanding the provisions of subsection (1) of this section, a member or members of the general assembly may vote in party caucus on matters directly relating to the selection of officers of a party caucus and the selection of the leadership of the general assembly.

Colo. Const. art. V, § 22a. The GAVEL amendment's enforcement provision provides that "[a]ny action taken in violation of section 20 [9] or 22a of this constitution shall be null and void." Colo. Const. art. V, § 22b.

Although we are not bound by the legislative council's 1989 publication explaining the GAVEL amendment to the public, it often provides "important insight into the electorate's understanding of the amendment when it was passed," *Carrara Place v. Arapahoe County Bd. of Equalization,* 761 P.2d 197, 203 (Colo.1988), as well as perhaps the public's intentions in adopting the amendment. Under a heading titled "Legislative Reform," the publication, *An Analysis of 1988 Ballot Proposals* [hereinafter *1988 Ballot Proposals* ], provided the following "arguments for" voting for the proposed GAVEL amendment:

4) Legislators will be given constitutional protection from being obligated to vote a certain way because of a party caucus position. The end result will be

sembly. *See* Legislative Council of the General Assembly, *An Analysis of the 1974 Ballot Proposals,* at 17 (1974).

**9.** Section 20 was amended at the same election in which §§ 22a and 22b were adopted. Section 20 was amended to add the second and subsequent sentences, *see* 1989 Colo.Sess.Laws 1664:

No bill shall be considered or become a law unless referred to a committee, returned therefrom, and printed for the use of the members. Every measure referred to a committee of reference of either house shall be considered by the committee upon its merits, and no rule of either

house shall deny the opportunity for consideration and vote by a committee of reference upon such a measure within appropriate deadlines. A motion that the committee report the measure favorably to the committee of the whole, with or without amendments, shall always be in order within appropriate deadlines. Each measure reported to the committee of the whole shall appear on the appropriate house calendar in the order in which it was reported out of the committee of reference and within appropriate deadlines.

that the debate and vote on bills will reflect an exchange of ideas between differing ideologies rather than perfunctory floor debate after the necessary votes have been committed through a caucus position.

5) The power base of the leadership of whichever party is the majority party will be reduced. Leadership of both parties has been accused of abusing that power when in control of the legislature. Changes which limit that power will curb those abuses and may limit the ability of a single political party to force its party philosophy on the entire electorate. Legislators may then become more responsive to a greater portion of the electorate rather than that of their political party and thus a smaller portion of the citizenry would be disenfranchised.

*1988 Ballot Proposals*, at 21.

■ The unmistakable intent of 1988 *Proposed Amendment No. 8*—which proposed the GAVEL amendment and the amendment to article V, section 20, of the constitution—is to correct "three alleged abuses of the legislative process" relating to: (1) the power of a committee chair to withhold action on a bill, in effect "killing it"; (2) the system by which bills are scheduled for debate that permits the Rules Committee to "kill" a bill by choosing not to schedule the bill for floor debate within certain deadlines; and (3) the system of party caucus positions, which the GAVEL amendment addresses. As with the speech-or-debate clause, we must liberally construe the GAVEL amendment to effectuate its purpose. *See Mountain States Tel. & Tel. Co.*, 67 Colo. at 228, 184 P. at 606.

As do numerous other provisions in the Colorado Constitution,[10] *see, e.g.*, Colo. Const. art. V, §§ 13, 17–22, 23–24, 26, 31, the GAVEL amendment governs legislative procedures in the enactment of legislation. Certain of the constitutional provisions prescribing and governing legislative procedures are mandatory because "[t]here is an express prohibition of the enactment of a

law in any other mode than the one pointed out, and hence a compliance therewith is a condition precedent to the validity of a legislative act coming within the provisions of the section." *In re Roberts*, 5 Colo. 525, 533 (1881). The GAVEL amendment is written in such mandatory language, conditioning the validity of any action taken by the General Assembly on compliance with its terms. *See* Colo. Const. art. V, § 22b.

## IV

Our next task is to determine whether the trial court properly dismissed Common Cause's complaint against the caucus members.

## A

■ We recognize that the GAVEL amendment, which places limits on legislative conduct, necessarily creates tension with the principles of the speech-or-debate clause, which serves to prevent executive and judicial interference with legislative activities.

Under our constitution the judiciary's authority to coerce legislators to comply with constitutional provisions governing the enactment of legislation is exceedingly limited. *See, e.g., City of Louisville v. District Court*, 190 Colo. 33, 37, 543 P.2d 67, 70 (1975). In cases concerning the legislature the judiciary's role in large part is limited to measuring legislative enactments against the standard of the constitution, and declaring them null and void if they are violative of the constitution—the GAVEL amendment's enforcement provision implicitly recognizes this principle, *see* Colo. Const. art. V, § 22b. *See, e.g., District Court*, 190 Colo. at 37, 543 P.2d at 70. As we stated in *People ex rel. O'Reilly v. Mills*, 30 Colo. 262, 265, 70 P. 322, 323 (1902):

When laws have been passed no doubt in a proper case the inquiry can then be made as to whether or not the requirements of the fundamental law in their passage or in their provisions have been

**10.** The United States Constitution also prescribes certain procedures that the Congress must follow in enacting legislation. *See* U.S. Const. art. I, § 7.

observed, but in the first instance the body to which has been delegated the power to pass laws must be left untrammeled, to act in such matters as its wisdom may dictate.

We conclude that the trial court did not abuse its discretion in dismissing Common Cause's complaint for injunctive relief against the caucus members-legislators.

### B

■ The request, however, by Common Cause for a declaratory judgment that the caucus members' actions violated the GAVEL amendment is another matter.

Although Common Cause's complaint requested both declaratory and injunctive relief, the trial court dismissed the complaint *in toto* because of its conclusion that injunctive relief was unavailable by operation of the speech-or-debate clause. Its ruling indicates that it erroneously misconstrued the complaint as requesting only injunctive relief:

> In the instant case, the plaintiffs have not asked this court to declare any *actions* of defendant-legislators unconstitutional. . . . Rather, plaintiffs have sought to bring members of the General Assembly before the Court and have requested the Court to enjoin these defendant-legislators from taking certain actions alleged to be in violation of the GAVEL Amendment.

*Colorado Common Cause v. Bledsoe*, No. 89CV7908, slip op. at 3 (Denver Dist.Ct. June 16, 1989) (emphasis in original). Common Cause's complaint unquestionably requested declaratory relief as well as injunctive relief, and we conclude that the trial court erred in dismissing the complaint without addressing Common Cause's request for declaratory relief.

The caucus members claim that the speech-or-debate clause mandates the dismissal of the complaint, including the request for a declaratory judgment. As we held above, the speech-or-debate clause does not automatically require the dismissal of legislators from a lawsuit that does not impose upon the legislators the burden of defending themselves. A declaratory judgment is a court's declaration of legal rights based on questions of law presented to the court, although of course in some cases it may be necessary for the court to precede such a declaration with a finding of facts. *See, e.g.,* C.R.C.P. 57. In contrast to actions seeking injunctive relief against legislators, declaratory-judgment actions do not present the same kind or degree of affirmative interference with legislative activities, nor do such actions impose upon legislators the same burden to defend themselves. Declaratory relief, if granted, does not "compel[ ] [the legislature] to pass an act . . . nor restrain[ ] [it] from passing an act," *Lewis v. Denver City Waterworks Co.*, 19 Colo. 236, 238, 34 P. 993, 994 (1893). Moreover, in declaratory-judgment actions to declare legislators' acts violative of the GAVEL amendment the legislators may choose not to defend, and permit the court to determine as a matter of law whether their conduct violated the GAVEL amendment.

The speech-or-debate clause thus does not afford a ground to dismiss Common Cause's complaint for declaratory relief from alleged violations of the GAVEL amendment.[11]

### V

The district court's judgment is affirmed in part and reversed in part, and this case is remanded to the district court for consideration, consistent with this opinion, of

---

11. The caucus members argue that even if the speech-or-debate clause does not prevent an action for declaratory relief against them, Common Cause's remedy is limited to that provided by the GAVEL amendment, namely the nullification of "any action" enacted in violation of the amendment. We disagree. The provision in the GAVEL amendment for a specific method of enforcing the amendment does not exclude the use of an action for declaratory judgment to obtain a declaration whether particular legislative conduct violates the amendment. Moreover, the caucus members do not suggest how a court is to effectuate the GAVEL amendment's enforcement provision—nullifying "any actions" in violation of the amendment—without first determining whether the "action" is in violation of the amendment.

Common Cause's complaint for declaratory judgment.

ERICKSON, J., concurs in the opinion and joins Parts I & IIA of Justice LOHR'S concurrence and dissent.

LOHR, J., concurs in the judgment in part and dissents in part, and KIRSHBAUM, J., joins.

VOLLACK, J., concurs in part and dissents in part.

Justice LOHR concurring in the judgment in part and dissenting in part:

The majority holds that the district court did not abuse its discretion when it dismissed Common Cause's complaint for injunctive relief against the caucus member legislators but that the court erred in dismissing the complaint for declaratory relief. I conclude that the district court's dismissal of the entire complaint filed by Common Cause was correct, although I do not agree that the speech-or-debate clause provides the basis for the dismissal. I therefore concur in the judgment in part and dissent in part.

## I.

I would hold that the GAVEL amendment, Colo. Const. art. V, § 22a, limits the legislative immunity provided ·by the speech-or-debate clause, Colo. Const. art. V, § 16. The GAVEL amendment and the speech-or-debate clause are coordinate constitutional provisions addressing the conduct of legislative activity. When several constitutional provisions concern the same subject, we must construe the provisions to harmonize with each other so far as possible. *See de'Sha v. Reed,* 194 Colo. 367, 371, 572 P.2d 821, 823 (1977). The speech-or-debate clause seeks to prevent interference with legitimate legislative activities and to shield legislators from the cost, inconvenience and distractions of a trial, *see Tenney v. Brandhove,* 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951), by limiting judicial inquiry into the legislative process, *id.* at 378, 71 S.Ct. at 789. GAVEL seeks to prevent abuses of the legislative process by prohibiting members of the

general assembly from providing or receiving vote commitments during party caucuses and elsewhere. The goal is to promote floor debate so that the debate and vote on bills will reflect an exchange of ideas among different ideologies. *See* Legislative Council of the Colorado General Assembly, *An Analysis of 1988 Ballot Proposals,* Research Publ. No. 326, 22 (1988). To this end, GAVEL specifically regulates the conduct of legislative activity. This regulation generates tension with the speech-or-debate clause. To the extent that there is a conflict, GAVEL, the subsequently enacted constitutional amendment, takes precedence. *de'Sha,* 194 Colo. at 371, 572 P.2d at 823. Moreover, GAVEL specifically prohibits particular vote commitment activity, thereby superseding in part the speech-or-debate clause's general protection of legislative activity. *Id.*

The complaint alleges conduct in violation of the GAVEL amendment; any legislative action resulting from such conduct is null and void. Colo. Const. art. V, § 22b. The validity of legislative action, including the enactment of statutes, therefore depends upon legislative compliance with GAVEL. Determination of such validity necessarily requires an inquiry into the caucus activity of the legislators. The trial court, however, ruled that the speech-or-debate clause conferred absolute immunity on legislators. Absolute immunity would prevent examination of legislative compliance with GAVEL. Accordingly, absolute immunity is incompatible with the purposes of GAVEL. The trial court therefore erred by dismissing the petitioners' complaint on the basis that the speech-or-debate clause grants absolute immunity to legislators with respect to the vote commitment activity alleged in the complaint.

## II.

The GAVEL amendment does not contain an enforcement mechanism or discuss specific remedies for violation of its provisions. Colo. Const. art. V, § 22b does provide that "[a]ny action taken in violation of [GAVEL] shall be null and void," which suggests the availability of judicial invalidation of legis-

lation. However, Common Cause does not seek that remedy. Instead, it requests a declaration that the respondent legislators violated GAVEL and also an injunction against future violations. I believe these requested remedies are inappropriate under the facts alleged in the complaint.

### A.

An injunction against future violations does not provide a suitable enforcement mechanism for GAVEL. Injunctions are an extraordinary remedy which the courts should employ sparingly. *Compton v. Knuth,* 117 Colo. 523, 527, 190 P.2d 117, 118–19 (1948). The injunctive remedy is an especially delicate matter when the courts seek to interfere with the legislative process, *City of Louisville v. District Court,* 190 Colo. 33, 37, 543 P.2d 67, 70 (1975), and raises serious concerns about the separation of powers. By issuing an injunction, the court constrains the manner by which the legislators may perform their duties; such constraints express a lack of respect due that coordinate branch of government. *Cf. Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (factors governing the determination of whether a case presents a nonjusticiable political question). The prospective nature of injunctive relief entangles the judiciary in legislative affairs to a far greater extent than retrospective review. Injunctions prohibiting conduct must be sufficiently precise to enable the enjoined party to conform its conduct to the injunction's requirements. *Colorado Springs Bd. of Realtors, Inc. v. State,* 780 P.2d 494, 499 (Colo.1989). GAVEL proscribes only a narrow range of legislative conduct; however, this conduct resembles other legitimate legislative activity such as canvassing. Legislators might forego a significant range of constitutionally protected legislative activity in order to avoid violating an injunction. In this fashion injunctive relief may inhibit legitimate legislative activity, to the detriment of the public interest. Furthermore, an injunction will require judicial supervision of the legislative process, a continuing intrusion into that body's constitutional autonomy. Judicial enforcement of an injunction, including

contempt sanctions, poses a significant risk of disruption of legislative activity. Accordingly, injunctions prohibiting violations of GAVEL entail excessive judicial intervention into the legislative process and are therefore inappropriate.

### B.

Contrary to the majority, I believe that this case is also inappropriate for declaratory relief. Declaratory judgment actions are intended "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations...." § 13–51–102, 6A C.R.S. (1987). *Community Tele-Communications v. Heather Corp.,* 677 P.2d 330, 334 (Colo. 1984). The tenor of the original complaint indicates that Common Cause sought declaratory judgment as a predicate to its claim for injunctive relief. Common Cause asserted past violations of the GAVEL amendment with respect to the appropriations and transportation bills. A declaration of past violations would support Common Cause's assertion of need for injunctive relief to prevent future violations when the same legislative subjects arise. However, since injunctive relief is not an appropriate remedy under the facts of this case, the declaratory judgment serves no purpose. Common Cause did not request the invalidation of the appropriations bill, so a declaratory judgment on the validity of the legislators' actions to provide a predicate for such relief is unnecessary or at least would be premature. Declaratory judgment should not be used to try a controversy piecemeal or try particular issues without settling the controversy. *See Lane v. Page,* 126 Colo. 560, 563, 251 P.2d 1078, 1080 (1952). A declaration about the alleged GAVEL violations, by itself, does not settle the controversy, prevent future violations, or invalidate legislation. The declaratory judgment will serve only as an advisory opinion. The court should refuse to grant a declaratory judgment because it will not resolve any judicially cognizable controversy. *See Heron v. City and County of Denver,* 159 Colo. 314, 316, 411 P.2d 314, 315 (1966); *Lakewood Fire Pro-*

*tection Dist. v. City of Lakewood,* 710 P.2d 1124, 1126 (Colo.App.1985). Thus, I believe declaratory judgment would be inappropriate based on the facts alleged and relief requested in the complaint.

ERICKSON, J., joins in Parts I and IIA of this concurrence.

KIRSHBAUM, J., joins in this concurrence and dissent.

Justice VOLLACK concurring in part and dissenting in part:

While I concur with the majority's conclusion that the trial court properly dismissed Common Cause's complaint for injunctive relief, I disagree with the conclusion in part IV(B) of the majority opinion that this case should be remanded for consideration of Common Cause's complaint for declaratory relief.

The general purpose of the declaratory judgment provisions of sections 13–51–101 to –115, 6A C.R.S. (1987), and C.R.C.P. 57, is to provide a remedy, where an actual controversy exists, for determining the legal rights, duties, or status of the parties before the controversy escalates into the repudiation of obligations, the invasion of rights, or the commission of wrongs. *People ex rel. Inter–Church Temperance Movement v. Baker,* 133 Colo. 398, 404, 297 P.2d 273, 277 (1956). Declaratory judgment actions should not be considered unless

> "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed."

*Id.* (quoting E. Borchard, *Declaratory Judgments* 200 (2d ed. 1941)). Thus, it is not the function of the courts to issue declaratory judgments that would not afford the plaintiff in the action immediate relief. *See Taylor v. Tinsley,* 138 Colo. 182, 183, 330 P.2d 954, 955 (1958).

Common Cause filed its complaint for declaratory and injunctive relief on May 24, 1989, requesting that the actions taken by the defendant caucus members in passing the "long appropriations bill" be declared unconstitutional. The general appropriations bill, or "long bill," became law on April 26, 1989, with an effective date of July 1, 1989. The funds allocated pursuant to the "long bill" have since been disbursed, leaving Common Cause without any form of immediate relief that would justify pursuing a declaratory judgment action. In my view, the problems surrounding the passage of the "long bill" have become moot.

In *Crowe v. Wheeler,* 165 Colo. 289, 439 P.2d 50 (1968), we stated:

> [A] judicial tribunal is not required to render a judicial opinion on a matter which has become moot. In this case, a judicial opinion would not serve to terminate any controversy or put to an end any uncertainty.... A case is moot when a judgment, if rendered[,] will have no practical legal effect upon an existing controversy....

*Id.* at 294–95, 439 P.2d at 53. Were the trial court to fulfill Common Cause's request on remand and declare the actions of the caucus members in passing the "long bill" unconstitutional, the judgment would have no practical effect on the controversy surrounding the passage of that bill. The matter on which Common Cause requests declaratory relief is therefore moot, and remand to the trial court for further consideration would be a fruitless exercise in my opinion.

In addition, I believe that Common Cause's prayer for declaratory relief is inadequate. In its complaint, Common Cause requests the court to enter an order declaring only that the caucus members' conduct in passing the "long bill" was "unlawful and unconstitutional." Common Cause does not challenge the constitutionality of the "long bill" itself, by seeking a declaration that, based on improper actions by the caucus members, the bill is "null and void." *See* Colo. Const. art. V, § 22b. Instead, Common Cause asks the court to review

the actions of certain legislators prior to the passage of the "long bill" and to declare only that those actions are unlawful. This, in my view, is an improper request.

While it is within the judiciary's power to review the constitutionality of a piece of legislation already passed, it is beyond the power of the courts to review, and in effect oversee, the actions of individual legislators simply for the purpose of determining the propriety of those actions and nothing more. As stated in *In re Senate Resolution No. 4*, 54 Colo. 262, 130 P. 333 (1913):

> [I]t is not, in our judgment, within the province of this court to say whether or not the general assembly has performed the duties imposed by the constitution. All departments of government stand on an equal plane, and are of equal constitutional dignity. The constitution defines the duties of each. Neither can call the others directly to account for actions within their province; and so it follows, that the judicial cannot say to the legislative department that it has, or has not, preformed [sic] its constitutional duties.

*Id.* at 271, 130 P. at 336.

It is therefore improper for the judiciary to review the actions of legislators solely for the purpose of determining if those actions were proper or not. While the actions of caucus members must be considered to determine if a violation of the GAVEL amendment has occurred, the request for declaratory relief must be framed in terms of whether the final piece of legislation passed is constitutional or whether it is "null and void," for this is the remedy expressly afforded by section 22b of the GAVEL amendment.

Common Cause requests only that the actions of individual legislators be declared unlawful. To comply with this request would constitute a judicial encroachment on the legislative process. It is my belief that Common Cause's complaint is deficient in that it fails to request a judicial declaration as to the validity of the "long bill," which action is certainly within the judiciary's power. The proper avenue for relief would have been for Common Cause to request the courts to declare the "long bill" null and void immediately after it was signed into law to prevent its eventual enforcement on the July 1, 1989, effective date. *See Lewis v. Denver City Waterworks Co.*, 19 Colo. 236, 239, 34 P. 993, 994 (1893).

For the foregoing reasons, I would affirm the trial court's dismissal of the case in its entirety.